# Jonas Brinser, Plff. in Err., v. Christianna Anderson et al.

To establish a parol contract for the sale of land and take it out of the statute of frauds the existence of the contract and its terms must be shown by full, complete, satisfactory, and indubitable proof; the evidence must define the boundaries and fix the consideration; exclusive and notorious possession must have been taken under it and continuously maintained; and the contract must have been so far in part performed that compensation in damages would be inadequate and rescission inequitable.

Where land was sold under articles of agreement and the purchase money was not all paid, a lease subsequently executed between the vendor and vendee cannot be set up as an estoppel by the vendor, but is merely evidence of the abandonment by the vendee of his equity, and as such must be submitted to the jury.

(Argued May 30, 1887. Decided January 3, 1888.)

Note.—For the enforcement of parol contracts for the sale of land, see note to Hillegass v. Hillegass, 2 Sad. Rep. 165.

May Term, 1887, No. 12, M. D., before GORDON, TRUNKEY, CLARK, STERRETT, and GREEN, JJ. Error to the Common Pleas of Dauphin County to review a judgment in favor of the plaintiffs in an action of ejectment. Reversed.

This action was brought by Christianna Anderson, Amanda Harley and her husband, Samuel Harley, Mary Thomas and her husband, Samuel Thomas, and George Anderson, heirs of John Anderson, against Jonas Brinser, for a lot of ground in Portsmouth, Dauphin county.

The facts are sufficiently stated in the opinion.

The specifications of error were as follows:

1. The court erred in answer to defendant's point, as follows:

Point. The facts that Anderson took this lease, and that by that writing he rented this property from Hershey, show that he was not the owner of it, and estop him now from claiming to be the owner.

*Ans.* This we cannot say, and we leave the question to you to determine, upon all the evidence of the case, whether or not the object of executing that lease was, as it appears from its face, in the absence of any other facts and circumstances in evidence, that Anderson was to become the lessor of Hershey for the lot which he otherwise had no title to. [1]

2. The court erred in charging the jury as follows: "Brinser, this defendant, stands just where Hershey did; he has no greater right, nor less. Anderson was in possession of the property, or Anderson's heirs were, after the death of Anderson; and that was notice to Brinser of the facts; and he could get no less nor no greater title than Hershey had. He stands precisely in Hershey's shoes."

3. The court erred in charging the jury as follows: "If you find by satisfactory evidence that the parol contract was made for the purchase of lot number 258; if you find what the amount of the purchase was, what the bargain was; if you find, by testimony of the same kind, that in pursuance of that Anderson went into possession, built a house and paid for it—if you find these facts, then, unless this lease was a charge of that condition, or was an agreement on Anderson's part that Hershey had become the legal owner, and that Anderson was only the lessor, you will find a verdict in favor of the plaintiffs."

4, 5. The action of the court in entering judgment on the reserved points—which reserved points were as follows:

"It is agreed by counsel on both sides that if the jury find a verdict in favor of the plaintiff, and the court should, on the motion for the entry of judgment for defendant *non obstante veredicto,* be of the opinion that the evidence of a parol purchase is not sufficient to take the case out of the statute of frauds, the judgment shall be entered for the defendant. It is further agreed that if, on the said motion, the court should be of the opinion that the existence of the lease is a legal bar to the recovery of the plaintiffs, then judgment to be entered for defendant *non obstante veredicto.*"

*A. J. Herr* and *J. C. McAlarney,* for plaintiff in error.—The court erred in submitting the question to the jury whether the lease was an agreement to pay purchase money in the form of rent.

In Leach v. Ansbacher, 55 Pa. 85, it was held when a party is in possession under a lease, the knowledge of the lease dispenses with the inquiry of how possession is held. That knowledge Jonas Brinser had, and of the very terms of the lease. See also Hood v. Fahnestock, 1 Pa. St. 470, 44 Am. Dec. 147.

If it be that a lease, such as the one in evidence, can be found not to be a lease, but an agreement for the payment of purchase money, without any evidence and without anything to show that Brinser knew it to be any other than it purported to be, then indeed can it be said "that no man can safely buy land which is not in the actual possession of the vendor," and the law as laid down in Wilson v. McCullough, 23 Pa. 440, 62 Am. Dec. 347, and Startwell v. Wilcox, 20 Pa. 123, is a delusion.

To take a case out of the statute of frauds, it is indispensable that the parol contract should be definite in its terms and unequivocally established. Goucher v. Martin, 9 Watts, 106; Postlethwait v. Frease, 31 Pa. 474; McKowen v. McDonald, 43 Pa. 441, 82 Am. Dec. 576.

The validity or invalidity of this lease depends on the proof of what took place when it was made, of which it should have been shown that Jonas Brinser had knowledge when he bought. Dinkle v. Marshall, 3 Binn. 589; Kostenbader v. Peters, 80 Pa. 441; United States v. Mertz, 2 Watts, 407.

Where the parties have put their contract in writing, in the

absence of fraud, accident, or mistake, parol evidence is inadmissible to vary it. Martin v. Berens, 67 Pa. 463; Re Eargood, 1 Pearson (Pa.) 399, and authorities cited.

To submit a fact destitute of evidence as one that may, nevertheless, be found, is an encouragement to err which cannot be too closely observed or unsparingly corrected. Stouffer v. Latshaw, 2 Watts, 167, 27 Am. Dec. 297; Bradley v. Grosh, 8 Pa. 49.

*H. L. Nissley* and *Fleming & McCarrell*, for defendants in error.—That the learned judge committed no error in refusing to enter judgment upon this verdict in favor of defendants, *non obstante veredicto,* is too plain to admit of any extended discussion. The testimony as to Anderson's purchase, payment of purchase money, possession, and improvements, was remarkably clear considering the lapse of time which had intervened. Had it been much less clear, distinct, and positive, the court would have been bound to submit it to the jury. Richards v. Elwell, 48 Pa. 367; Milliken v. Dravo, 67 Pa. 233.

The lease, even if made by Anderson, was not inconsistent with the manner in which it was shown that Hershey held the title. Kunkle v. Wolfersberger, 6 Watts, 126.

Even if it was fairly a question in the case the decision in Leach v. Ansbacher, 55 Pa. 85, cited for plaintiff in error, does not sustain his contention.

The cases cited by Thompson, J., for his remark in Leach v. Ansbacher, 55 Pa. 85, do not sustain his declaration that knowledge of a lease dispenses with all further inquiry. He cites Hood v. Fahnestock, 1 Pa. St. 474, 44 Am. Dec. 147, and also Sugden, Vendors, 339.

In Hood v. Fahnestock, 1 Pa. St. 474, 44 Am. Dec. 147, it is said: "Every purchaser of land must be presumed to know whether the possession be vacant or not. The purchaser of an estate in the possession of tenants is chargeable with notice of the extent of their interests as tenants; for having knowledge of the tenancy, he is bound to inform himself of the conditions of the lease."

The citation from Sugden on Vendors, 339, does not seem to be in point, if it is correctly quoted in 1 Pa. 475; and besides, it there appears that Sugden's doctrine is not approved in Pennsylvania, as will appear from Billington v. Welsh, 5 Binn. 134,

6 Am. Dec. 406.    See also Jaques v. Weeks, 7 Watts, 276;
Daniels v. Davison, 16 Ves. Jr. 249; 17 Ves. Jr. 433; Allen v.
Anthony, 1 Meriv. 282; Hottenstein v. Lerch, 104 Pa. 460;
Jamison v. Dimock, 95 Pa. 55.

OPINION BY MR. JUSTICE CLARK:

It is agreed that John Snyder owned and died seised of the
premises in dispute; both parties rely on this common source of
title.   The plaintiffs, on the one hand, are the heirs at law of
John Anderson, deceased; who, they allege, in his lifetime, in
the year 1857, purchased the premises under a parol contract
from the heirs of John Snyder, then deceased; and their claim
is that this parol contract has been so far in part executed as to
render it unjust and inequitable to rescind the same.   The de-
fendant, on the other hand, claims under a regular executed
conveyance from the heirs of Snyder to J. Hoffman Hershey,
dated November 22, 1858, and under deed from Hershey to
him, dated August 19, 1884; they deny that any such parol
sale was made; and that if it had been, the defendant purchased
without notice of it; and further, that if any such equitable
right or title ever existed, it was subsequently abandoned and
nullified by an agreement to take the premises under a lease at
a certain yearly rent.

The first question arising in the case, therefore, is whether
or not, if the evidence is believed, a parol contract has been es-
tablished by sufficient proof and enough shown to take the case
out of the statute of frauds; this was a question of law for
the court below and is for our consideration here.   Overmeyer v.
Koerner, 81* Pa. 517.

To establish a parol contract for the sale of land and take
it out of the statute of frauds, the existence of the contract and
its terms must be shown by full, complete, satisfactory, and in-
dubitable proof; the evidence must define the boundaries and
fix the consideration; exclusive and notorious possession must
have been taken under it, and continuously maintained; and the
contract must have been so far in part performed that com-
pensation in damages would be inadequate and rescission in-
equitable and unjust.   Hart v. Carroll, 85 Pa. 508.

In Jamison v. Dimock, 95 Pa. 52, it was held, however, that
in the case of a parol sale for a money consideration, fully paid
according to the contract, where the possession was taken and

continuously held in pursuance thereof, it is not essential that the improvements should be such as could not be compensated in damages; that the equities of the vendee might rest upon other equally available grounds.

In the case at bar the parol agreement is alleged to have been made by Washington R. Snyder, one of the heirs in his own behalf, and "representing" the remaining heirs of John Snyder, deceased. Who the remaining heirs were does not distinctly appear in the proofs; the defendant read in evidence the deed to J. Howard Hershey, purporting to be from the heirs and legal representatives of John Snyder, deceased; and from the note made of it in the evidence, it would seem that he left at least four children and heirs, *viz.,* Washington R. Snyder, Maria, intermarried with Christian Fisher, Sarah, intermarried with John Winnagle, and Catherine, intermarried with one Snavely; whether or not there were any others does not appear.

It is undoubtedly true that there was a contract for the sale of this lot by Washington R. Snyder to John Anderson, made in the year 1857. The receipt, dated October 22, 1857, taken with the other evidence in the case, is full and complete on this point; the terms of the contract are, we think, sufficiently shown. The lot is described as No. 258 in the borough of Middletown; which may be regarded perhaps as a proper designation of the boundaries. The consideration was $300, a considerable part of which, if not all, was shown to have been paid. Possession was taken immediately after and in pursuance of the purchase, and a dwelling house was erected upon it. The possession was open and notorious, and was continuously maintained for many years, and until legal proceedings were instituted to test the title. But how, and by what authority did Washington R. Snyder represent his sisters in the sale? Was he their attorney in fact, regularly constituted, or was he their agent by parol merely? He might, perhaps, enter into a parol contract in respect to his own interests; but could he without authority bind his sisters? They were not present; they do not appear to have participated in the sale, or to have approved it after it was made. It does not appear that they received any portion of the purchase money, or indeed that they ever knew any such contract was made, at least until after their conveyance to Hershey. We are not to presume that Washington R. Snyder had power to sell his sisters' shares, simply because he assumed to have it; and if he had

not the power, his contract to that effect was of no validity whatever as to them; it was just as if it had never been made; and there is not the slightest proof that any such power existed.

The transaction in question occurred nearly thirty years ago, during nearly all of which time the plaintiffs had been in possession under claim of title. It cannot be expected, perhaps, after this great lapse of time, that the proof should be as precise as if it related to a recent occurrence; but a person purchasing real property knows, or ought to know, that the law requires the evidence of his title to be in writing. The burden of proof is therefore upon him; the delay, as in this case, is frequently his own fault; and this stringent but salutary rule of evidence will not generally be relaxed in his favor. It was incumbent, therefore, upon the plaintiffs, not only to establish the existence of a contract made by Washington R. Snyder, and the terms of that contract, but also his authority for making the same.

But, assuming that on the retrial of this case proof may be made on the authority of Washington R. Snyder to represent his sisters in the sale, we come next to consider the question as to the effect of the written agreement made between Hershey and Anderson on the 30th of December, 1875. It is contended on the part of the defendant that this writing was an abandonment of any equity Anderson may have acquired under the parol purchase alleged; and that he and his heirs are thereby estopped from claiming any title to the lot.

The lease was undoubtedly evidence of abandonment; and was, with all the other evidence in the case, for the consideration of the jury; but it cannot be set up as an estoppel. Hershey was the holder of the legal title. Anderson had for eighteen years made default in the payment of the purchase money; and it was Hershey's clear right by an equitable ejectment at any time to rescind the contract and recover the possession. But he might contract, in the form of a lease or otherwise, with the defaulting vendee for the continuance of his possession for fixed periods of time on terms agreed upon, the rent to be applied to the interest or principal of the purchase money. Abandonment includes both the intention to abandon and the external act by which that intention is carried into effect. Intent is the essence of the act; and therefore the facts are in each particular case for the jury. Clemmins v. Gottshall, 4 Yeates, 330; Atchison

**v.** M'Cullock, 5 Watts, 13; Heath v. Biddle, 9 Pa. 273; Kunkle **v.** Wolfersberger, 6 Watts, 126.

Very similar to this is the case last cited. There the owner of the equity of redemption executed a lease of the mortgaged premises to the mortgagee, covenanting to pay to him an annual rent of $24 together with the taxes and repairs. It was argued in that case, as it is in this, on the one hand that the acceptance of the lease was a relinquishment of the equity; on the other hand, it was contended that the lease was only a mode adapted for securing the possession for a definite time, and providing for the interest in the form of rent, and that whether it was or was not was for the jury. Chief Justice GIBSON, delivering the opinion of the court, said: "The only original thing in the cause, and it is not of difficult solution, is the effect of the lease from one of the defendants to the grantor, under whose title the plaintiff claims, which is said to be a decisive circumstance, either to rebut the alleged mortgage originally or to dissolve the relation created by it, if it ever existed; and that is matter of law for the court. But why should the relation of landlord and tenant be thought inconsistent with that of mortgagor and mortgagee? Without it a mortgagor is an occupant liable to be turned out at a moment's warning; and it is hard to imagine why a stipulation for a term certain, at a rent equivalent to the interest, may not be reconciled to the intention of the principal contract."

If a lease under such circumstances was not inconsistent with the relation between mortgagor and mortgagee, we cannot see how it could be supposed to be inconsistent, under like circumstances, with the relation of vendor and vendee. We think the court was right, therefore, in submitting to the jury "whether Hershey took the deed from Snyder in the interest of Anderson, and to enable Anderson, by paying the $150 on the footing of the lease, to obtain title to the lot." "If Anderson in making this lease," says the learned court, "and Hershey in taking the lease, did not intend that Anderson was acknowledging that he had no title to the property, but it was for the purpose of carrying out that arrangement and of securing the payment of the $150, the giving of the lease would not, as a pure matter of law, prevent Anderson or his heirs from setting up a claim of title; and we leave to you to determine what his intention was from all the facts in the case in the giving of the lease."

There was evidence in the cause from which the jury might

well find that Anderson did not intend by the execution of the lease to abandon his title.    He seems to have regarded the deed to Hershey as collateral security for the $150 which Hershey advanced in discharge of the purchase money; and Hershey himself, if the testimony of George Anderson and Amanda Harley is believed, regarded the $150 as a loan to Anderson for the purpose stated.    Upon the evidence of these witnesses, although there was certainly much countervailing proof, the court could not do otherwise than submit the question to the jury.

But it is said that Brinser was a bona fide purchaser, without notice of any equity in Anderson; and therefore his title is not affected by it.    This would seem to be true, unless by the possession of Anderson Brinser was put upon inquiry as to the title under which the possession was maintained.    Anderson was at the time in possession under the terms of the paper which has been denominated a lease; and if Brinser had actual knowledge of the lease, and had no knowledge of the facts relating to its execution, it is probable, under the ruling of this court in Leach v. Ansbacher, 55 Pa. 85, he might be regarded as an innocent purchaser.

"Nothing in the transaction," says Mr. Justice THOMPSON, in the case last cited, "gave the least sign to put the purchaser upon inquiry.    The possession will, it is admitted; but when the party is in possession under a lease, the knowledge of the lease dispenses with the inquiry of how the possession is held. That knowledge the agent had, and of the very terms of the lease.    That was enough for him.    He was not bound to inquire of the tenant in possession if the lease was fair or fraudulent, or whether there was a trust notwithstanding." Sedgw. Vendors, 339; Hood v. Fahnestock, 1 Pa. St. 474, 44 Am. Dec. 147.

But there is not the slightest evidence in this case that Brinser knew of the lease; and we are not to assume a fact that has not been proved.    If he had no knowledge of the lease, then plainly the possession put him upon inquiry as to the ground of that possession; and he is chargeable constructively with the knowledge of every fact which due and proper inquiry would have brought to light.    Leonard's Appeal, 94 Pa. 168.

The possession of Anderson was notice of the title under which that possession was maintained.

Judgment reversed and a *venire facias de novo* awarded.