## Peoples Trust Co. et al. *v.* Consumers Ice & Coal Co., Appellant.

*Corporations—Sale of real estate—Power of directors.*

1. The board of directors of a business corporation, unless restrained by charter or general laws, has the common law right to sell such of its real and personal property as will not interfere with the exercise of the corporate franchises and business.

*Statute of frauds—Sale of real estate—Memorandum in writing —Corporations—Resolutions of directors—Survey of land—Identification—Parol evidence—Improvements—Specific performance— Equity—Jurisdiction.*

2. Any memorandum in writing indicative of the intent of the parties, and so precise as to enable the inquirer to ascertain the terms of the contract, the land to be conveyed and the price to be paid for it, is a sufficient contract in writing to be enforced specifically.

3. Where there is a sufficient memorandum in writing, a delivery thereof is not necessary to satisfy the statute of frauds.

4. Where one corporation agrees to sell real estate to another, the minutes of the corporations, containing the resolutions, duly attested by the respective secretaries, are a sufficient signing to satisfy the statute.

5. A delivery of a copy of the resolutions is not necessary.

6. Where the resolution of each company refers to a survey and the resolution of the accepting company describes the property by abutting lands, there is a sufficient description of the real estate.

7. In such case it is competent to identify the survey by parol evidence.

8. A survey is a measured plan or draft containing a written statement of the courses, distances and quantity of land.

9. Separate papers may constitute the memorandum in writing required by the statute of frauds.

10. A case is taken out the statute of frauds where the vendee takes possession of the land and makes upon it valuable improvements such as the installation thereon of machinery and fixtures.

11. Where it appears that a corporation, which agrees to purchase land from another corporation, was organized and largely officered by persons in control of the latter, and that thereby it became possessed of and was clothed with an apparent ownership of

valuable real estate whereby it was able to contract loans, its creditors have a strong equity as against the minority stockholders of the selling company, to compel a conveyance of the land agreed to be sold.

Argued February 10, 1925. Appeal, No. 192, Jan. T., 1925, by defendants, from decree of C. P. Lancaster Co., Equity Docket No. 7, page 33, awarding specific performance, in case of Peoples Trust Co. of Lancaster and Charles L. Miller, Receivers of the Mackey Company, v. Consumers Ice & Coal Co., H. A. Mettfett et al., officers and directors. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill for specific performance. Before HASSLER, J. The opinion of the Supreme Court states the facts. Decree for plaintiff. Defendant appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Paul A. Mueller,* with him *J. R. Kinzer, John E. Malone* and *John M. Groff,* for appellants.—The board of directors of appellant corporation had no power to contract for the sale of the realty in question.

There was not such part performance of any contract, or the assumption of exclusive possession of the realty by appellee, which excepts the contract from the requirements of the statute of frauds: Dougan v. Blocher, 24 Pa. 28; Weller v. Potts, 230 Pa. 6; Miller v. Zufall, 113 Pa. 317.

The resolution appearing on the minutes of the board of directors of appellant is not a sufficient written memorandum to satisfy the requirements of the statute of frauds.

The instant case is not one calling for equitable relief: Callen v. Ferguson, 29 Pa. 247; Andrews v. Bell, 56 Pa. 343; Rigg v. Ry. Co., 191 Pa. 298.

*John A. Coyle,* with him *Charles L. Miller,* for appellees.—The directors had power to convey real estate: Dana v. Bank, 5 W. & S. 223; Ardesco Oil Co. v. Oil Co., 66 Pa. 375; Johnson Co. v. Miller, 174 Pa. 605.

No express form of words is necessary to comply with the statute of frauds: M'Farson's App., 11 Pa. 503; Colt v. Seldeff, 5 Watts 525; Cadwalader v. App., 81 Pa. 194; Townsend v. Hargraves, 118 Mass. 325.

The resolutions of the board of directors of the Consumers Ice & Coal Company are a sufficient writing.

Delivery of the memorandum of the contract is unnecessary.

Exclusive possession and improvements by purchaser take case out of statute: Hart v. Carroll, 85 Pa. 508; Derr v. Ackerman, 182 Pa. 591; Eberly v. Lehman, 100 Pa. 542; Brinser v. Anderson, 9 Sadler 176; Haslet v. Haslet, 6 Watts 464.

OPINION BY MR. JUSTICE WALLING, March 16, 1925:

The Consumers Ice & Coal Company (herein called the Ice Company) is and for some years has been a Pennsylvania corporation, chartered under the Act of April 29, 1874, and its supplements, as a corporation of the second class, and located at Lancaster. In the summer of 1922, certain individuals secured a like Pennsylvania charter for a corporation with a capital stock of $100,000, known as "the MacKay Company," the purpose of which was the manufacture of incubators and other poultry supplies, at Lancaster. Several stockholders and officers of the Ice Company being interested in the MacKay Company, it was mutually agreed that the latter should acquire for its use certain real estate of the former, at the price of $20,000, to be paid for with stock of the MacKay Company at par. In July of that year, the Ice Company apparently made an offer of the real estate in question to the MacKay Company on the terms above stated. In any event, on the fourth of the next month (August) the stockholders of the latter

company, which had just received its charter, held a
formal meeting, perfected an organization, and at the
meeting of its board of directors on the same day, "it
was resolved that the offer of the Consumers Ice & Coal
Company to grant, bargain, sell and convey to this com-
pany a certain tract of land with building and improve-
ments thereon, situated partly in Lancaster City, and
partly in Manheim Township, Lancaster County, Pa.,
at the intersection of Ice Avenue and North Plum Street,
adjoining the property of the said Ice Company and the
Pennsylvania railroad right-of-way, including a rail-
way siding as now constructed and the perpetual use
thereof over the property of said Ice Company, and a
right-of-way of at least twenty feet wide adjoining said
tract to the east, as surveyed by I. Carpenter, C. E., on
July 21, 1922, copy of which draft is attached hereto, in
consideration of the issuing of $20,000 par value of the
capital stock of this company to said Consumers Ice &
Coal Company, be accepted; and upon the execution
and delivery of proper deed or deeds for said property,
free and clear of any encumbrances, the president and
treasurer are authorized and directed to issue and de-
liver to the said the Consumers Ice & Coal Company
four hundred (400) shares [at par value of $50 per
share] of the capital stock of this company." There-
after, on August 14, 1922, at a meeting attended by
all the directors of the Ice Company, "it was unani-
mously resolved that the Consumers Ice & Coal Company
sell, grant and convey, to the MacKay Company, all that
certain piece of land, situated partly in Lancaster City
and partly in Manheim Township, with buildings and
improvements thereon erected, bounded and described,
as follows:.....Containing — acres, as per survey made
by I. Carpenter, C. E., for the sum of twenty thousand
dollars ($20,000)." This resolution also authorized the
president and secretary to execute the deeds and receive
the purchase price. A further resolution adopted at
the same meeting declared, inter alia, that the stock of

the MacKay Company was worth par and accepted the $20,000 in full payment for the land, and also declared that the sale thereof would "not interfere with the full exercise of the corporate franchises and business of this company." As a part of the agreement and in anticipation of this sale, the Ice Company had erected certain buildings on the land in question for the use of the MacKay Company. Pursuant to the agreement of the parties, as evidenced by the resolutions above mentioned, the MacKay Company took and retained possession of the real estate so purchased, expended large sums in equipping and fitting the buildings to meet its special needs; also had the buildings insured and in general assumed control of the property as owner and proceeded to manufacture incubators, etc., therein. At a meeting held on September 19, 1922, the directors of the Ice Company adopted a resolution authorizing its officers to proceed and execute the agreement as embodied in the resolution of August 14th. Charles L. Miller, Esq., of the Lancaster Bar, was attorney for both corporations and prepared a deed describing the property according to the Carpenter survey, which had been made at the instance of the Ice Company. Mr. Miller exhibited the deed to the Ice Company's manager, who expressed satisfaction therewith and affixed the seal of his company thereon, but requested that the execution of the deed be delayed until after January 1, 1923, to avoid complicating the income tax returns. The MacKay Company often expressed a readiness to perform on its part and requested an execution of the deed, which was never done, and in May, 1923, the Ice Company adopted a resolution in repudiation of the sale. The MacKay Company proved a financial failure and in July, 1923, being insolvent, passed into the hands of receivers, who promptly filed this bill praying for a decree compelling the Ice Company and its officers to specifically perform the contract for the sale of the real estate as above mentioned. To this a responsive answer was filed and tes-

timony taken. Thereupon the trial court made numerous findings of facts and legal conclusions, sustaining plaintiffs' contention, and in due course a final decree for specific performance was entered; then defendants brought this appeal.

We find no reversible error. Under clause twelve of section thirty-nine of the Act of April 29, 1874, P. L. 73, 103, consent of the stockholders was necessary to the sale of the corporation's real estate; that clause, however, was amended by the Act of June 12, 1919, P. L. 442, which confers upon the board of directors the right to acquire and dispose of real estate; but section thirty-nine seems to refer to another species of corporations and if so neither that section nor the amendment would apply to the instant case. The trial court thought they did not but rightly held that the board of directors of a business corporation, unless restrained by charter or general laws, had the common law right to sell such of its real and personal property as would not interfere with the exercise of the corporate franchises and business. In Ardesco Oil Co. v. N. A. Mining & Oil Co., 66 Pa. 375, 382, Mr. Justice Sharswood, speaking for the court, says, "Corporations, unless expressly restrained by the act which establishes them or some other act of assembly, have and always have had an unlimited power over their respective properties, and may alienate and dispose of the same as fully as any individual may do in respect to his own property. Hence an insolvent corporation may make a general assignment for the benefit of its creditors, and this power may be exercised by the directors, unless special provision to the contrary is made in the charter: Dana v. The Bank of the United States, 5 W. & S. 223"; and see Fox's App., 93 Pa. 406, 412; DeCamp v. Alward, 52 Ind. 468. As a general rule a private corporation has full power to alienate its real and personal property. See Maxler v. Freeport Bank et al., 275 Pa. 510; Illoway v. Daily, 65 Pa. Superior Ct. 333; 7 R. C. L. 571. The trial court found the sale of

the property in question would not interfere with the proper exercise of the Ice Company's franchise or business; hence, as its directors were not restrained by charter or general laws they had authority to make the contract here in question.

Of course, to give validity to a contract for sale of land there must be a sufficient written memorandum thereof to satisfy the statute of frauds. As to the written description of the property here, the MacKay Company resolution, accepted by the Ice Company, describes it by abutting lands and an attached draft, while the resolution of each company expressly refers to the Carpenter survey, which gives a full and accurate description. A survey is a measured plan or draft containing a written statement of the courses, distances and quantity of land. See Bouvier's Law Dictionary, vol. 3, p. 3211. As the resolutions refer to the Carpenter survey, it was competent to identify the latter by parol evidence: 25 R. C. L., p. 681; Beckwith v. Talbot, 95 U. S. 289, 292; Shelinsky v. Foster, 87 Conn. 90, 87 Atl. 35. "Parol evidence is admissible to identify the writing spoken of in another writing, [and is also] admissible to identify a draft referred to in a signed memorandum, though the draft itself was not signed": Reed on the Statute of Frauds, vol. 1, p. 537. Separate papers may constitute the required written memorandum and here the resolutions and survey to which they refer are sufficient for that purpose. "Any memorandum in writing indicative of the intent of the parties, and so precise as to enable the inquirer to ascertain the terms of the contract, the land to be conveyed, and the price to be paid for it, is a sufficient contract in writing to be enforced specifically": M'Farson's App., 11 Pa. 503; and see Western Timber Co. v. Kalama River Lumber Co., 42 Wash. 620, 85 Pac. 338.

The minutes of the corporations, containing the resolutions, were duly attested by the respective secretaries, which was a sufficient signing to satisfy the statute:

Argus Co. v. Mayor, etc., of Albany, 55 N. Y. 495; Marden v. Champlain (R. I.), 22 Atl. 938. Where there is a sufficient memorandum in writing, a delivery thereof is not necessary to satisfy the statute of frauds (Allen et al. v. Mowry et al., 278 Pa. 64; Witman v. Reading, 191 Pa. 134; Hart et al. v. Carroll, 85 Pa. 508; Brinser v. Anderson, 9 Sadler 176), nor is it necessary for that purpose to show the delivery of a copy of the resolution adopted by and spread upon the minutes of a corporation. In the instant case the taking possession of the property by the vendee, with the consent of the vendor, without more, constituted a sufficient acceptance of the contract.

The trial court also found there was such a taking and continued possession by the vendee and the making by it of such valuable improvements as would take the case out of the statute of frauds and justify a decree of specific performance of a parol contract. As we are satisfied of the sufficiency of the written contract, we deem it unnecessary to discuss this branch of the case, or other minor questions found in the record.

Appellants make a final objection that this is not such a contract as equity should specifically enforce. This objection cannot be lightly disregarded, but when we consider that the MacKay Company was chartered, organized and officered largely by those in charge of the Ice Company, who clothed it with an apparent ownership of valuable real estate, whereby it was enabled to secure loans and contract other obligations, it must be conceded that the creditors of the MacKay Company have an equity which cannot be ignored. While that company turned out an unfortunate enterprise, it was undertaken in good faith and the record contains neither allegation nor proof of fraud. It may be, as urged, a hardship on the Ice Company's minority stockholders, but under all the circumstances we cannot say the trial court reached a harsh or inequitable conclusion. Plaintiffs' equity is stronger because of the large amount of

labor and material expended upon the property, including the installation of machinery and fixtures.

The assignments of error are overruled and the decree is affirmed at the costs of appellants.