474 A.2d 1142

**TARGET SPORTSWEAR, INC., Appellant,**

v.

**The CLEARFIELD FOUNDATION.**

Superior Court of Pennsylvania.

Argued Dec. 15, 1983.

Filed March 30, 1984.

Petition for Allowance of Appeal Denied July 17, 1984.

4

Leonard Dubin, Philadelphia, for appellant.

Carl A. Belin, Jr., Clearfield, appellee.

Before SPAETH, President Judge, and CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

In this equity action seeking a decree for specific performance, the trial court denied relief. This appeal followed.

The case centers around a factory building and lot in Clearfield County known as the "Cleardon" property. Appellee, the Clearfield Foundation, holds and at all times pertinent to this appeal has held title to the premises. Appellant, Target Sportswear, Inc., occupied the building beginning on July 1, 1982, under an oral month-to-month lease. At the time Berg Electronics, a division of E.I. DuPont de Nemours and Company, held an option to buy the property, and had given its approval to Target's month-to-month tenancy.

Berg's option was due to expire on October 2, 1982. In early October Target expressed interest in buying the property. Negotiations with the Foundation ensued, and after

expiration of Berg's option to purchase, the Foundation offered the property to Target in a letter signed by Foundation president Ralph Kane and dated November 8, 1982. The letter, addressed to Mr. Morris DeMatteo, Vice President of Target Sportswear, stated:

Dear Mr. DeMatteo:

Following a meeting of the members of the Clearfield Foundation, I have been instructed to offer to you the "Cleardon" building and lot totalling 5.82 acres upon the following terms and conditions:

1. We will sell you the property for a sum of $350,000;

2. No repairs and/or changes will be made at the expense of the Clearfield Foundation;

3. We would propose that we would be willing to enter into an agreement of under the following financial arrangements:

A. Ten percent (10%) of the purchase price to be paid upon execution of the agreement by Target funds;

B. Sixty percent (60%) of the purchase price to be financed through P.I.D.A. for fifteen (15) years at an interest rate of three percent (3%). As you want to get into the building as soon as possible, and we want to sell, we propose the Clearfield Foundation receive the three percent (3%) interest payment until such time as the loan is approved with P.I.D.A. and the monies received from them. However, this time period would not extend beyond four (4) months from the agreement date.

C. The remaining thirty percent (30%) of the purchase price to be financed through our local banks for fifteen (15) years at an interest rate of fifteen (15) percent with five (5) points. This financing may be arranged by Target through banks of their preference;

4. That possession would pass upon execution of the agreement;

5. That the risk of loss, maintenance, and liability for municipal assessments and taxes would be the responsi-

bility of the purchaser from and after the date of execution of the agreement; and

6. This proposal will expire on December 10, 1982.

If this proposal is acceptable to you, please sign the copy of this letter as it is enclosed and return it to the undersigned. The agreement will be prepared as soon as this acceptance is received.

DeMatteo signed the letter on the line provided and returned it to Kane on December 7, 1982. Next to the signature line, over DeMatteo's initials, had been typed "Subject to finalizing terms and conditions of agreement of sale." Also, paragraph 3.C. of the letter had been crossed out and initialed by DeMatteo.

Along with the returned Foundation letter, DeMatteo had sent the following cover letter:

Dear Mr. Kane:

On behalf of TARGET SPORTSWEAR, INC., it is my pleasure to inform you that a decision has been made to accept Clearfield Foundation's proposal of sale of the "Cleardon" building and lot, as offered in your letter dated November 8, 1982. Enclosed find a signed copy of your proposal, as you requested.

I would like to arrange a date that would be convenient for you and your committee so that we can arrange to finalize the terms and conditions of the agreement of sale.

Based on our discussion, where in you agreed that financing of the non P.I.D.A. portion of this purchase can be arranged by us at any financial institution, at competitive rates, acceptable to us. [Sic] I have therefore, taken the liberty of crossing out paragraph 3C. of your November 8, letter.

Further, we were advised that, prior to passage of title from Clearfield Foundation, we have no insurable interest and, therefore, can not accept building risks that are normally insured. However, we are amiable to discussing interim costs for insurance that you may bear.

Pursuant to our letter dated August 19, you understand that purchase may be made by TARGET SPORTS-WEAR, INC., or affiliate, or TARGET's designee.

I want to express my sincere appreciation to you and your committee for the cooperation and the efforts exerted by all of you in helping to conclude this transaction. And also, for allowing TARGET to continue to expand in the Clearfield area.

On December 9, 1982, the Clearfield Foundation board of directors held a meeting. In the official minutes of the meeting the following entry appears:

TARGET—Pres. Kane reported that a letter was received from Morris DeMatteo of Target, informing the Board that Target had made a decision to buy the Cleardon building at a price of $350,000. Financing will be PIDA, 60%, and Target to come up with the other 40%. Target is to pay the Foundation 10% down on completion of the PIDA loan, which will take 3 to 4 month.[Sic] The Foundation will pay the insurance on the building until Target is sole owner.

On December 10, 1982, the parties met with a PIDA official to discuss PIDA loan application procedures.* Shortly thereafter the Foundation forwarded PIDA loan application forms to Target.

Target contacted a local bank about financing the non-PIDA portion of the purchase money to be borrowed, and on April 28, 1983 obtained a commitment letter from the bank for a loan of $105,000, or 30% of the purchase price. However, Target did not inform the Foundation of the bank commitment, nor did it apply for PIDA financing.

By letter dated May 20, 1983, the Foundation informed Target that unless negotiations were concluded and the transaction closed within thirty days, "the proposition will be withdrawn."

---

* PIDA is an acronym for the Pennsylvania Industrial Development Authority; it provides low-interest loans for local industries under the auspices of local development authorities such as the Foundation.

Upon further discussion the Foundation learned that Target considered the deal to be conditioned on its ability to obtain PIDA financing. The parties failed to consummate the agreement within thirty days.

Meanwhile, the DuPont company had renewed its interest in the Cleardon building. On June 29, 1983, the Foundation agreed to sell the building to DuPont for $400,000.

Target commenced suit for specific performance and damages. The action was bifurcated, and the count for specific performance went to trial on September 30, 1983, before President Judge Paul Greiner of Elk County, specially presiding. At the close of the plaintiff's evidence the defendant moved for a nonsuit. The plaintiff requested that the motion be reserved until after presentation of defense evidence. The request was granted, and the defendant put on its case on the express condition that the motion not be considered waived. After hearing all the evidence the court on November 14, 1983 granted the reserved motion for nonsuit, and later denied the plaintiff's exceptions and motion to take off the nonsuit. In a well-reasoned and thorough opinion, the court held that the plaintiff's evidence was insufficient to show a contract enforceable under the Statute of Frauds.

Preliminarily appellant Target argues that entry of a nonsuit after presentation of defense evidence was improper, and that in reviewing the trial court's decision we should take into account all of the evidence.

■■■ A motion for nonsuit is a device to test the sufficiency of the plaintiff's evidence and as a general rule may not be granted where the defendant has offered any evidence. *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978). Under ordinary circumstances it would have been error for the court to grant the nonsuit motion after hearing defense evidence. However, in this case the plaintiff clearly on the record waived operation of the general rule and countenanced the extraordinary procedure employed by the trial court. We will therefore consider

whether the plaintiff's evidence alone was sufficient to establish its claim.

The plaintiff is still entitled to a very favorable standard of review. In determining whether an involuntary nonsuit should have been entered, we must give the plaintiff the benefit of every fact and reasonable inference arising from the evidence, and must resolve conflicting testimony in the plaintiff's favor. Entry of a nonsuit is proper only in a clear case where the facts and circumstances lead to absence of liability as their only conclusion. *McNally v. Liebowitz*, 498 Pa. 163, 445 A.2d 716 (1982).

There are three issues Target would have us decide: first, whether the evidence was sufficient to show that a contract for sale of the Cleardon building existed; second, whether the contract was adequately memorialized in writing as required by the applicable Statute of Frauds (Act of March 21, 1772, 1 Sm.L. 389, § 1, 33 P.S. § 1); third, if the written memoranda were not sufficient to satisfy the Statute of Frauds, was the statute waived?

We believe the case may be decided on the second two issues alone. That is, we agree with the trial court that the written memoranda in this case do not satisfy the statute; and as the statute was not waived, we cannot enforce any parol contract that might have existed. The order denying specific performance must therefore be affirmed.

The Statute of Frauds is a declaration of public policy requiring that contracts for the conveyance of real estate be supported by written evidence signed by the party to be charged. *Burns v. Baumgardner*, 303 Pa.Super. 85, 449 A.2d 590 (1982). The statute is not a mere rule of evidence, but a limitation on judicial power to order specific performance of a contract in the absence of a writing. *Haskell v. Heathcote*, 363 Pa. 184, 69 A.2d 71 (1949).

Here Target bases its action on three writings: the Foundation's offer letter of November 8; Target's return letter of December 7; and the Foundation's board minutes of December 9. There is no doubt that the statute's re-

quirement of a written memorandum of the contract may be satisfied by more than one writing. *Fleming v. Strayer*, 163 Pa.Super. 607, 610, 63 A.2d 122, 124 (1949), enunciates the rule to be followed when more than one writing is relied on:

The general requisites of a memorandum are listed in Restatement, Contracts, § 207, and the rule governing the sufficiency of separate writings to constitute a memorandum is set forth in § 208:

"The memorandum may consist of several writings,

(a) if each writing is signed by the party to be charged and the writings indicate that they relate to the same transaction, or

(b) though one writing only is signed if

(i) the signed writing is physically annexed to the other writing by the party to be charged, or

(ii) the signed writing refers to the unsigned writing, or

(iii) it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings."

*Cf.* Restatement (Second) of Contracts, § 132 (1981) (somewhat liberalizing original section 208(b)).

The key to this case is that Target sought to enforce the contract *as modified by its own letter* of December 7, and not as it stood in the original offer letter of November 8. The Foundation did not sign Target's letter, nor annex its letter to Target's, nor refer in its letter to Target's, nor sign its letter "with reference to" Target's. Is the Foundation's signature on the original offer letter itself sufficient to bind the Foundation under the Statute of Frauds?

A writing is insufficient as a memorandum unless all of the essential terms and conditions of the contract are stated. *Swift & Company v. Meehan*, 283 Pa. 429, 129 A. 324. Whether the memorandum relied upon is a single document or consists of several related or connected writings, the complete terms of a valid agreement must be ascertainable therefrom with certainty and must also disclose an intention to be bound. *Brister & Koester*

*Lumber Corporation v. American Lumber Corporation*, 356 Pa. 33, 50 A.2d 672; *Fleming v. Strayer*, 163 Pa.Superior Ct. 607, 63 A.2d 122. A mere indication of the existence of an incomplete agreement is not sufficient. *Franklin Sugar Refining Company v. John*, 279 Pa. 104, 123 A. 685. A memorandum which omits or incompletely states the essential terms or which merely refers to a contract without stating its terms is insufficient. *Stein v. Camden Fibre Mills, Inc.*, 148 Pa.Superior Ct. 348, 25 A.2d 741.

*Williams v. Stewart*, 194 Pa.Super. 601, 608, 168 A.2d 769, 771–72 (1961).

What is crucial to determine from the standpoint of the Statute of Frauds is, are "all the essential terms and conditions of the contract" stated in the memorandum signed by the Foundation? Are "the *complete* terms of a valid agreement ascertainable therefrom with certainty"?

We must answer these questions in the negative. Clearly certain "essential terms and conditions of the contract" are not stated in the Foundation's original letter. Although Target signed and returned the letter within the deadline provided for acceptance, its own cover letter purportedly made the following three modifications to the contract: 1) the original provision in paragraph 3.C. that the non-PIDA portion of the financing was to be through a local bank at 15% interest over fifteen years was replaced with "the non P.I.D.A. portion of this purchase can be arranged by us at any financial institution, at competitive rates, acceptable to us"; 2) the original provision in paragraph 5 allocating the risk of loss to Target upon execution of the agreement was replaced with "prior to passage of title from Clearfield Foundation, we have no insurable interest and, therefore, can not accept building risks that are normally insured. However, we are amiable to discussing interim costs for insurance that you may bear"; 3) although the offer contained no assignee clause, the return letter stated that purchase could be made by Target, its affiliate, or its designee.

■ The modifications completely obliterate the financing guidelines of the original offer and replace them with terms "acceptable to [Target]"; reallocate the responsibility for insurance to the Foundation until passage of title; and introduce into the agreement an option for Target to designate a third-party purchaser. It cannot seriously be contended that these were "unessential" contract provisions.

■ Where a writing provides in detail for the manner of purchase financing, places the risk of loss on one party, and identifies a specific purchaser, an unsigned writing substantially reforming these provisions must be held to violate the Statute of Frauds. *See Safe Deposit & Trust Co. of Pittsburg v. Diamond Coal & Coke Co.,* 234 Pa. 100, 83 A. 54 (1912); *Grieber v. Scott,* 315 Pa.Super. 30, 461 A.2d 619 (1983) (mode of mortgage payments essential). *See also Zitzelberger v. Salvatore,* 312 Pa.Super. 402, 458 A.2d 1021 (1983) (insurance risks generally are borne by purchaser upon agreement and before passage of title).

Appellant asserts that under the Statute of Frauds the signed writing or memorandum need not be a formal sales contract, and that the following "minimal requirements" are all that need be in writing for the contract to be enforceable: "The property must be adequately described, the consideration must be set forth, and the agreement must be signed by the party to be charged." *American Leasing v. Morrison Co.,* 308 Pa.Super. 318, 323, 454 A.2d 555, 557 (1982). Appellant's citation to *American Leasing,* however, begs the question whether essential terms were missing from the writing signed by the Foundation. Undoubtedly its letter offering the property could have memorialized "an agreement" sufficiently under the statute; the problem is it was not a complete memorandum of "the agreement" on which specific performance was sought. *See Mason-Heflin Coal Co. v. Currie,* 270 Pa. 221, 113 A. 202 (1921); 37 C.J.S. *Statute of Frauds* § 181 (1943).

In Statute of Frauds cases

"we should always be satisfied with 'some note or memorandum' that is adequate ... to convince the court that

there is no serious possibility of consummating fraud by enforcement. When the mind of the court has reached such a conviction as that, it neither promotes justice nor lends respect to the statute to refuse enforcement because of informality in the memorandum or its incompleteness in detail." *Beeruk Estate*, 429 Pa. 415, 418–19, 241 A.2d 755, 758 (1968), *quoting* 2 Corbin, Contracts § 498 at 680–81 (1950).

*Axler v. First Newport Realty Investors*, 279 Pa.Super. 14, 17, 420 A.2d 720, 722 (1980). Cf. *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co. of America*, 396 Pa. 506, 153 A.2d 472 (1959) (construing statute of frauds as revised in Uniform Commercial Code). But here we are prevented from enforcing a contract not because of the informality or incompleteness in detail of the signed memorandum, but because another memorandum containing different terms and provisions is *not* signed. See *Northwestern Consolidated Milling Co. v. Allebach*, 82 Pa.Super. 563 (1924); *Southern Pine Sales Corp. v. Braddock Lumber Co.*, 81 Pa.Super. 309 (1923).

▇▇ Target argues that it is clear that in fact the Foundation had agreed to all the modifications contained in the letter of December 7, and that in fact the modifications were of very little consequence to the Foundation. However, Target's proof of these facts consisted of prior and subsequent oral admissions and conduct by Foundation officers. Clearly this parol evidence may not overcome the statute's requirement of a signed writing.

[W]here a written agreement is varied by oral testimony the whole contract in legal contemplation becomes parol. If there is anything settled in our law that principle is firmly established. When therefore a party to an executory agreement in writing for the sale of lands succeeds in reforming it by oral testimony he reduces the whole agreement to a parol contract, and deprives himself of the right to have it specifically performed. He pulls down the house on his own head. When he converts the writing into an oral agreement, the statute declares it to

'be void.' He has rectified the written contract and in its place has established an agreement which in contemplation of law is parol and therefore, by statutory mandate, absolutely invalid and without force.... The statute is not a mere rule of evidence, but a limitation of judicial authority to afford a remedy.

*Brown v. Aiken,* 329 Pa. 566, 579–80, 198 A. 441, 447 (1938) (footnote omitted), *quoting Safe Deposit & Trust Co. of Pittsburg v. Diamond Coal & Coke Co., supra* 234 Pa. at 111, 83 A. at 58.

The fact that the alleged oral modifications to the contract were reduced to writing in the December 7 letter does not alter their character as parol.

The statute of frauds is not satisfied ... by a written offer and a written acceptance which annexes additional terms, conditions, or other variations which are not in turn accepted *in writing* by the party making the original offer. Even where oral modifications of a written offer or acceptance are agreed to by the other party, the contract, being partly in parole, is deemed to be an oral contract and insufficient under the statute.

37 C.J.S. *Statute of Frauds* § 180(c), pp. 664–65 (emphasis added, footnotes omitted).

Target contends that the missing link of a signed writing ratifying the parol modifications contained in the December 7 letter is supplied by the Foundation's board minutes of December 9, 1982, which are signed by Foundation secretary Betty Lou Mack. Target relies on *Peoples Trust Co. v. Consumers Ice & Coal Co.,* 283 Pa. 76, 128 A. 723 (1925), and *Pirilla v. Bonucci,* 320 Pa.Super. 496, 467 A.2d 821 (1983), for the proposition that board minutes signed by a corporate secretary are sufficient as written memoranda under the Statute of Frauds.

However, both cases must be distinguished. In each case the signed writing held to be sufficient under the statute contained a resolution by corporate stockholders to accept an offer to buy real estate (*Peoples Trust*) or securities (*Pirilla; see* 13 Pa.C.S. § 8319(1)). Each group of stockhold-

ers formally voted at their meeting to enter a contract, and the resolution embodying their formal action was spread upon the minutes of the meeting.

In comparison, the Foundation's minutes simply state: "that Target had made a decision to buy the Cleardon building"; that "[f]inancing will be PIDA, 60%, and Target to come up with the other 40%"; and that "[t]he Foundation will pay the insurance on the building until Target is sole owner." From the minutes themselves we cannot determine whether they do anything more than paraphrase the contents of the Target letter. The minutes do not indicate that the Foundation board took any action, and certainly do not indicate that the parol modifications in the letter had been "ratified" by the board. *See Ripple v. Pittsburgh Outdoor Advertising*, 280 Pa.Super. 121, 421 A.2d 435 (1980) (endorsed rental checks could not serve as written ratifications of lease agreement).

Finally, we turn to whether the Statute of Frauds was waived in this case. Indubitably, the party against whom enforcement of an oral contract is sought may waive the operation of the statute. *Haskell v. Heathcote, supra; Bethlehem Steel Corp. v. Tri State Industries, Inc.*, 290 Pa.Super. 461, 434 A.2d 1236 (1981). Such a waiver occurs where the party fails to raise the statute in pleadings, *Brown v. Hahn*, 419 Pa. 42, 213 A.2d 342 (1965); *Martin v. Wilson*, 371 Pa. 529, 92 A.2d 193 (1952); *Bethlehem Steel Corp., supra;* or affirms the oral contract, *Schuster v. Pennsylvania Turnpike Commission*, 395 Pa. 441, 149 A.2d 447 (1959); or admits its existence in pleadings or testimony, *Zlotziver v. Zlotziver*, 355 Pa. 299, 49 A.2d 779 (1946); *Eastgate Enterprises, Inc. v. Bank & Trust Co. of Old York Road*, 236 Pa.Super. 503, 345 A.2d 279 (1975); even by inadvertence, *Martin v. Wilson, supra.* Compare *H.B. Alexander & Son, Inc. v. Miracle Recreation Equipment Co.*, 314 Pa.Super. 1, 460 A.2d 343 (1983) (statute of frauds as contained in UCC, 13 Pa.C.S. § 2201, waivable by agreement or course of dealing between the

parties); *Edelstein v. Carole House Apartments, Inc.,* 220 Pa.Super. 298, 286 A.2d 658 (1971) (oral waiver of contract condition under Statute of Frauds).

Appellant finds a waiver of the statute in certain intramural statements by Foundation officers to the effect that Target had "agreed" to buy the Cleardon building or had "accepted" the Foundation offer to sell it. These statements, which the trial court permitted Target to introduce to prove the existence of a contract on the theory of post-contract conduct, cannot constitute a waiver of the Statute of Frauds. In the proper case, such statements perhaps could estop a party from denying the existence of a contract. However, the principle of estoppel is unavailing against the Statute of Frauds. *Polka v. May,* 383 Pa. 80, 118 A.2d 154 (1955); *Glasgow v. G.R.C. Coal Co.,* 295 Pa.Super. 498, 442 A.2d 249 (1982); *cf. Burns v. Baumgardner, supra* (although estoppel is contrary to policy of Statute of Frauds, oral promise will be enforced to extent of reasonable reliance).

The order of the trial court denying specific performance and refusing to take off nonsuit is affirmed.

SPAETH, President Judge, files a concurring opinion.

SPAETH, President Judge, concurring:

I agree with the majority that the trial court's order should be affirmed. However, I find it unnecessary to consider, as the majority considers, *see* its op. at 11–12 *et seq.,* whether the memorandum signed by the Foundation satisfied the Statute of Frauds. Foundation's letter was an offer. Target's letter was a counter-offer because it materially altered the terms of Foundation's offer; Target is trying to enforce its counter-offer. However, since the counter-offer is not signed by the party to be charged, enforcement of it is precluded by the Statute of Frauds.