**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-3441 and 11-3584
_____

MEIR GELLEY,

Appellant in No. 11-3441

v.

PARK PLEASANT, INC.,

Appellant in No. 11-3584

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-09-cv-00057)
District Judge: Hon. Mary A. McLaughlin
_____

Argued June 5, 2012

BEFORE: SCIRICA, GREENAWAY, JR. and COWEN,  <u>Circuit Judges</u>

(Filed:  August 6, 2012)

G. Thompson Bell, III, Esq.
Craig A. Hirneisen, Esq.
Stacey A. Scrivani, Esq. (Argued)
Stevens & Lee
111 North Sixth Street
P.O. Box 679
Reading, PA 19603

Counsel for Appellant Meir Gelley
in No. 11-3441

John S. Bagby, Jr., Esq. (Argued)
Bagby & Associates
Route 252 South
Paoli Executive Green II, Suite 301
Paoli, PA 19301

Counsel for Appellant Park Pleasant, Inc.
in No. 11-3584

_____

OPINION

_____


COWEN, <u>Circuit Judge</u>.

Plaintiff Meir Gelley appeals from the August 12, 2011 order of the United States

District Court for the Eastern District of Pennsylvania insofar as it entered judgment in

favor of Defendant Park Pleasant, Inc., and against Gelley on Gelley's breach of contract

claim. Because we determine that the District Court committed reversible error with

respect to the well-established "time of the essence" doctrine, we will vacate and remand

with instructions to the District Court to enter a judgment of specific performance in

favor of Gelley and against Park Pleasant.

I.

On July 14, 2008, Gelley and Park Pleasant executed a Purchase and Sale

Agreement. For a total price of $7.8 million, Gelley agreed to buy Park Pleasant's

Philadelphia nursing home business as well as a several parcels of real estate. He was

required to pay an initial "Deposit" of $50,000.00 within two business days, which was done. According to the Agreement, the term "'Additional Deposit' means the sum of [$250,000.00] which shall be deposited by Buyer into escrow with Escrow Agent upon the conclusion of the Due Diligence Period, together with all interest and earnings thereon, if any." (JA97-JA98.) The "Due Diligence Period" was then defined as "the period ending at 5:00 p.m. on September 5, 2008." (JA98.) The closing date was set for November 30, 2008.

On August 13, 2008, Gelley had a dinner meeting with Nancy Kleinberg, Park Pleasant's administrator and co-owner. He specifically expressed concern about the nursing home's case mix index ("CMI").[1] According to Gelley, his consultants believed that some residents may have been receiving unnecessary therapy in order to raise the CMI and that, if he were to take over the nursing home, he would be unable to continue this practice. The consultants purportedly believed that this practice—while most likely not fraudulent in nature—could be considered as a form of "abuse." (JA241, JA624.) Gelley accordingly proposed a reduction in the purchase price.

The parties then engaged in further discussions over the next few weeks. On September 5, 2008, Kleinberg's attorney (Michael Krekstein, Esquire) left his counterpart (Joanne Judge, Esquire) a voicemail message stating, inter alia, that, because the parties had been unable to agree on a price, there was no reason to discuss an extension of the

---

[1] The CMI is a numerical index measuring the amount of services administered to residents (i.e., more services results in a higher index and, in turn, more Medicaid reimbursement for the nursing home).

Due Diligence Period. In a subsequent e-mail to Krekstein, Judge purported to accept Krekstein's August 19, 2008 offer to extend the Due Diligence Period until September 26, 2008. Krekstein then sent a letter to Judge stating that Gelley "is in default of the Agreement by having failed to put up his additional deposit, and this will confirm the seller's decision to terminate the Agreement." (JA199.) While Gelley paid the Additional Deposit into escrow on September 26, 2008, Park Pleasant refused to close on the transaction. Gelley accordingly commenced the current action.

On February 15, 2011, the District Court determined, inter alia, that the Statute of Frauds did not preclude Gelley's claim for specific performance. A bench trial was then held before the District Court. In an August 12, 2011 order, the District Court, among other things, entered judgment in favor of Park Pleasant and against Gelley on his breach of contract claim. It also issued an extensive memorandum setting forth its findings of fact and conclusions of law. In particular, the District Court stated that it "need not determine whether time was of the essence or whether the plaintiff's breach was material, because payment of the second deposit by the close of due diligence was an explicit condition of the agreement and failure to satisfy a condition allowed for termination." Gelley v. Park Pleasant, Inc., Civil Action No. 09-0057, 2011 WL 3564797, at *13 (E.D. Pa. Aug. 11, 2011) (footnote omitted). Both Gelley and Park Pleasant filed notices of appeal.

4

II.

"[A] 'condition precedent' may be defined as a condition that must occur before a duty to perform under a contract arises." [2] Boro Constr., Inc. v. Ridley Sch. Dist., 992 A.2d 208, 215 (Pa. Commw. Ct. 2010) (citing Beaver Dam Outdoors Club v. Hazleton City Auth., 944 A.2d 97 (Pa. Commw. Ct. 2008)).  However, even if payment of the $250,000.00 Additional Deposit constituted a condition precedent, we still must consider whether time was of the essence for the performance of this condition.  It is well established that "[t]ime is not of the essence in a contract unless it is specifically so provided or unless the circumstances clearly indicate that it was the intent of the parties." Bogojavlensky v. Logan, 124 A.2d 412, 415 (Pa. Super. Ct. 1956) (citing Morrell v. Broadbent, 140 A. 500 (Pa. 1928)).

The District Court failed to apply this well-established "time of the essence" doctrine.  We accordingly must reject Park Pleasant's theory that the District Court implicitly determined that time was of the essence in this case.  In fact, the District Court explicitly stated that it "need not determine whether time was of the essence." Gelley, 2011 WL 3564797, at *13 (footnote omitted).  Applying this doctrine ourselves, we ultimately determine that neither the language of the Agreement nor the surrounding

---

[2] The District Court had subject matter jurisdiction over this diversity case pursuant to 28 U.S.C. § 1332, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  The parties agree that Pennsylvania substantive law applies to this contract dispute.  It also is undisputed that we review the District Court's findings of fact for clear error and exercise de novo review over its legal conclusions.

5

circumstances clearly indicated that time was of the essence with respect to the payment of the Additional Deposit.

It is uncontested that the Agreement itself lacked any express "time is of the essence" clause or language. It did state that all of its provisions "shall be deemed and construed to be 'conditions' and 'covenants'" (JA124), but this language applied to every single provision in the Agreement and lacked any specific reference to time periods or deadlines. Turning to the other provisions in the Agreement, we observe that: (1) pursuant to Section 8.1.1(iv), Park Pleasant was permitted to terminate the Agreement "if any of the conditions in Section 3.6 has not been satisfied *as of the Closing Date* or if satisfaction of such a condition is or becomes impossible" (JA121 (emphasis added)); (2) under Section 3.6.1, Park Pleasant was not obligated to consummate the closing unless and until Gelley "shall have performed and complied in all material respects with all of its obligations under this Agreement which are to be performed or complied with by it prior to *or on the Closing Date*" (JA107-JA108 (emphasis added)); and (3) Section 3.7 provided that, "[i]f any of the conditions in Paragraph 3.6 have not been satisfied *on or before the Closing Date*, Seller, shall have as its sole remedy the right either to . . . (b) terminate this Agreement and proceed in accordance with Section 8.4.1" (JA108 (emphasis added)). At the very least, these provisions could reasonably be read as establishing that Gelley's performance of conditions by the Closing Date would be sufficient under the Agreement and that Park Pleasant would then have no grounds to terminate the Agreement or to refuse to go ahead with the closing. The Agreement

6

actually placed even more emphasis on the Closing Date by stating that, "[n]otwithstanding any provision in this Agreement to the contrary, this Agreement shall automatically terminate if the Closing has not occurred by November 30, 2008, unless extended by mutual agreement of the parties." (JA121.) We note the absence of any similar contractual language relating to the payment of the Additional Deposit.

Turning to the surrounding circumstances, we do take into account the various contentions raised by Park Pleasant (i.e., the Agreement did not obligate or bind Gelley until the end of the Due Diligence Period and Gelley's payment of the Additional Deposit by September 5, 2008, and this date was itself the product of negotiations between the parties). Nevertheless, we determine that the circumstances, especially when considered in the light of the contractual language discussed above, did not "clearly indicate that it was the intent of the parties" to make time of the essence to the payment of the Additional Deposit. Bogojavlensky, 124 A.2d at 415 (citation omitted). We specifically note that it was Krekstein (at Kleinberg's own direction) that first made an offer to extend the Due Diligence Period. This offer and the subsequent communications regarding, among other things, a possible extension of time would seem to be at odds with the supposedly critical nature of the September 5, 2008 date. Furthermore, neither the parties nor their attorneys ever clearly indicated to their respective counterparts that time was of the essence here. For instance, Krekstein did not say in his September 5, 2008 voicemail message to Judge that time was of the essence or that his client would otherwise insist on performance by 5:00 p.m.

7

In the end, Gelley's "mere failure to perform on the date mentioned in a contract is not per se a breach which wholly destroys the contract." Id. at 416 (citations omitted). We further determine that this failure and delay in making the Additional Deposit did not otherwise rise to the level of a material breach of the Agreement, especially given the apparent absence of any significant changes or actions on the part of Park Pleasant (i.e., any attempt by Park Pleasant to sell the nursing home business and real estate to another party, any significant new commitment of funds, or any significant changes in management) in the relatively short period of time between the September 5, 2008 date and the subsequent payment of the Additional Deposit on September 26, 2008. See, e.g., id. ("Being of the opinion that the time for delivery of possession was not of the essence, the question remains whether defendant's failure to deliver possession on October 1, 1955, amounted to a breach of sufficient materiality to warrant plaintiffs' attempt to cancel the contract and demand the refund of the money paid.").

Accordingly, the District Court's August 12, 2011 order will be vacated insofar as it entered judgment in favor of Park Pleasant and against Gelley on Gelley's breach of contract claim. Given the circumstances of this case as well as the District Court's findings of fact, we determine that Gelley is entitled to the remedy of specific performance under Pennsylvania law. See, e.g., Cimina v. Bronich, 537 A.2d 1355, 1358 (Pa. 1988) ("Mindful of this caution, specific performance should only be granted where the facts clearly establish the plaintiff's right thereto, where adequate remedy at law does not exist, and where justice requires it." (citing Clark v. Pa. State Police, 436 A.2d 1383

8

(Pa. 1981); Roth v. Hartl, 75 A.2d 583 (Pa. 1950))). We therefore will remand with instructions to the District Court to enter a judgment of specific performance in favor of Gelley and against Park Pleasant. [3]

## III.

For the foregoing reasons, we will vacate the District Court's order of August 12, 2011 insofar as it entered judgment in favor of Park Pleasant and against Gelley on Gelley's breach of contract claim, and we will remand with instructions to the District Court to enter a judgment of specific performance in favor of Gelley and against Park Pleasant.

---

[3] Because we determine that the District Court committed reversible error with respect to the "time of the essence" doctrine, we need not—and do not—reach the other issues raised by Gelley in its appeal. We likewise will dismiss Park Pleasant's cross-appeal from the District Court's Statute of Frauds ruling as moot because our "time of the essence" ruling does not involve any parol modification of the written Agreement. See, e.g., Target Sportswear, Inc. v. Clearfield Found., 474 A.2d 1142, 1149 (Pa. Super. Ct. 1984) ("""When therefore a party to an executory agreement in writing for the sale of lands succeeds in reforming it by oral testimony he reduces the whole agreement to a parol contract, and deprives himself of the right to have it specifically performed.""") (quoting Brown v. Aiken, 198 A. 441, 447 (Pa. 1938))).

Park Pleasant has waived any challenge to the District Court's rejection of its breach of contract counterclaim by failing to raise and brief on appeal the District Court's ruling on this counterclaim. We also will not review Park Pleasant's quantum meruit counterclaim, which the District Court below dismissed as moot in light of its decision for Park Pleasant on Gelley's breach of contract claim. Park Pleasant did not raise or brief this issue on appeal.