**Estate of Sinclair c/o Glenmede Trust Co. v. Levin**

*Peter E. Meltzer*, for plaintiff.
*Leon W. Silverman*, for defendant.

DJERASSI, *J.*, May 21, 2014—This appeal follows a bench trial where defendant, Harvey Levin, failed to appear and plaintiff, Estate of George D. Sinclair, was unprepared. Defendant ("Levin") is the appellant here; plaintiff ("estate") is the cross-appellant. Glenmede Trust Co. administered the estate.

In dispute was a $150,000 promissory note and an incorporated financing agreement through which Levin had agreed to purchase a Center City Philadelphia commercial property owned by the estate. The note was issued by the estate.

The chief trial issue was how to calculate monies Levin owed the estate after repeated defaults over a nine year period. The judgment turned on when "default," as defined in the instrument, actually took place. Application of

different interest rates depended on the timing of various defaults.

After trial, the estate was awarded $130,003.19. More than half this amount was unpaid interest.

Levin is now hoping to reopen a factual claim that he could not prove at trial, having failed to appear. In his absence, Levin's lawyer argued Levin was not responsible for any payments because the promissory note itself was unsigned. Levin, however, had made dozens of payments since 2006 on the loan, and counsel's argument was rejected.

For its part, the estate complains that an evidentiary ruling merits a new trial. However, the estate sought admission of a financial summary under Pa R.E. 1006 without giving the opposing party a chance to see the underlying records. As their procedure violated Rule 1006, the summary was precluded. The ruling did not prevent the estate from proving Levin's liability.

Finally, Levin challenges this court's arithmetic on how much he owes. Having not raised this issue at post-sentence motions, it is waived. Nonetheless, a review was conducted because judgment was not entered until after Levin's notice of appeal was filed. There is indeed an error in the amount of $656.96 in favor of Levin. Remand is requested for the purpose of correcting the judgment order.

## I. PROCEDURAL HISTORY

The estate filed a complaint on May 15, 2012 alleging breach of contract. On June 12, 2013, after a non-jury trial, this court filed findings of fact and conclusions of law and

awarded $130,003.19 in favor of the estate. Judgment was docketed after both parties had filed notices of appeal in September 2013 after post-trial motions were denied.

On November 7, 2013, a Rule 1925(b) order was issued to the parties, both of whom responded before judgment was finally docketed in January 2014.

## II. STATEMENT OF FACTS

In December 2003, the estate loaned Levin $150,000 by promissory note. The loan was issued to finance Levin's purchase of the estate's real property at 2009 Chestnut Street in Philadelphia. For the next three years, Levin was supposed to make monthly payments on the principal but tendered no payments whatsoever. After this, the parties signed a new agreement in the fall of 2006 ("2006 agreement") setting new terms governing Levin's $150,000 obligation on the promissory note.

Under the new terms, Levin owed the principal but the parties renegotiated what would happen if: 1) Levin failed to pay consecutively every month, and 2) there was a "default" as defined under the 2006 agreement. The parties had agreed that interest would be waived post-2006 if Levin made ninety (90) payments of $1666.66 in consecutive fashion, on time and in full. If Levin did not make these 90 payments in consecutive fashion, then interest would be paid by Levin at two different rates. Which of the two interest rates would apply depended on whether there was a default as defined in the 2006 agreement. If Levin failed to make the 90 consecutive payments and there was a default, then the interest rate during any period in default was 11%. If interest must be

paid because there was a gap in the 90 monthly payments but there was no default as defined in the 2006 agreement, then the interest rate would only be 8%. If there was a default under the 2006 agreement, the interest rate would be 11% until the default was cured.

After default, the estate had the right to accelerate and demand full payment of both principal and accumulated interest at any time.

The parties stipulated at trial that Levin signed the 2006 agreement. They disputed whether the underlying promissory note was attached, signed, or enforceable.

At trial, Ed Rouh, the director of specialized fiduciary services for Glenmede Trust Co., testified that he signed the 2006 agreement on behalf of the estate as appointed executor. He was shown the 2006 agreement and identified the signature of Hazel Sinclair, executor and wife of the late George Sinclair. Rouh also testified that when he signed the 2006 agreement himself, the promissory note was attached to the 2006 agreement. Rouh also said he believed the phone number on a faxed copy of the 2006 agreement was Levin's attorney's phone number, but he could not be sure. The faxed copy, he said, was sent to him as estate administrator by Levin's agents or attorneys.

In its amended complaint, the estate averred at paragraph 8 that Levin had made "monthly payments of $1666.66 from November 2006 through August 2010 but has made only one payment of $1666.67 since then, on February 11, 2011." This was read into the record and accepted.

### III. ISSUES RAISED BY LEVIN

On cross-appeal, after failing to appear at trial, Levin argues that the wrong interest rate was applied to calculate the money he owes. He also claims he owes no interest whatsoever, and that if he does, it is only the legal rate of interest, a rate never mentioned in the 2006 agreement.

A. This Court Properly Awarded Interest To The Estate As Required By The 2006 Agreement.

1. The Promissory Note is enforceable.

Levin's claim that interest rates are misapplied essentially concedes that the promissory note itself is enforceable. The court agreed that it was enforceable because the 2006 agreement was a signed written contract, with a clear inference that both parties had also agreed to the promissory note securing Levin's $150,000 payment for 2009 Chestnut Street.

A written contract may consist of several signed and unsigned writings if one of the writings is signed and: 1) the signed writing is physically attached to the unsigned writing; 2) the signed writing refers explicitly or impliedly to the unsigned writing; or 3) based on examination of all the writings, the signed writing was signed with reference to the unsigned writings. *Target Sportswear, Inc. v. Clearfield Found,* 327 Pa. Super. 1, 11, 474 A.2d 1142, 1147 (1984) citing Restatement (Second) of Contracts § 132, comment C (1981); *see also Sw. Energy Prod. Co. v. Forest Res., LLC,* 2013 Pa. Super. 307, 83 A.2d 177, 187, *reargument denied* (Feb. 4, 2014), quoting *Huegel v. Mifflin Const. Co., Inc.,* 796 A.2d 350, 354-355 (Pa. Super. 2002) ("Where several instruments are made as part of one transaction they will be read together, and each

will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other.").

At trial, both parties stipulated that Levin signed the 2006 agreement. The 2006 agreement explicitly refers to the promissory note in the following paragraphs:

7. In addition to the principal balance due, interest has accumulated and is due and owing by Harvey M. Levin to the estate of George D. Sinclair, deceased, *the terms and calculation of which are more fully set forth in a promissory note attached hereto and made part hereof.*

8. In the event that Harvey M. Levin defaults in payment of the principal payments due hereunder, the executors shall have the right to accelerate and demand full payment of both principal and accumulated interest, *with interest to be calculated as set forth in the terms of the attached promissory note, with accumulated interest to be calculated from the date of the original promissory note, and shall have the right to exercise any and all rights provided in the promissory note, including, but not limited to, an action in confession of judgment.*

9. The terms of provisions of said promissory note are incorporated herein and made part hereof.

10. Harvey M. Levin shall re-sign the copy of the attached promissory note.

*See* The 2006 agreement ¶¶ 2, 8, 9, 10 (Exhibit A) (emphasis added).

The estate has proven that it was more likely than not that Levin agreed to the promissory note because its terms were incorporated into the signed 2006 agreement.

2. The court applied the correct interest rate under the attached Promissory Note.

The next issue examines whether the estate proved its interest damages. Levin argues that the 8% and 11% rates specified in the 2006 agreement are not applicable. He also argues, alternatively, that if interest is owed at all, it is only at the statutory rate of 6%.

When the language of a contract is clear and unambiguous, a court is required to give effect to that language. *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 588 Pa. 205, 212, 903 A.2d 1170, 1174 (2006) (quoting *Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 512 Pa. 420, 517 A.2d 910, 913 (1986)). Language in a contract is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *E.R. Linde Const. Corp. v. Goodwin*, 2013 Pa. Super. 136, 68 A.3d 346, 349-50 (quoting *Hutchison v. Sunbeam Coal Co.*, 513 Pa. 192, 201, 519 A.2d 385, 390 (1986)). Neither the language of the 2006 agreement nor the promissory note is ambiguous. The terms of the 2006 agreement, signed by both parties, state in paragraph 7 that interest is owed whenever Levin fails to make consecutive principal monthly payments when due. *See* exhibit A.

The terms state that if Levin meets his end of the 2006 agreement, he would owe no interest at all for his failure to pay monies on the promissory note prior to signing the

2006 agreement. However, if he failed to keep his promise of consecutive monthly payments after signing the 2006 agreement, then interest for the earlier period would kick in at a rate of 8%. This is derived from the text of the promissory note itself, which specifies 8% as the interest rate governing the period from December 2003 to the signing of the 2006 agreement.

The parties agreed to a different interest rate for the period of time after the signing of the 2006 agreement. Now if there was a default under the 2006 agreement, the interest rate would be 11%. The parties agreed that such a default occurred only when the promised monthly payments were not made. This occurred for the first time in August 2010.

Therefore, in calculating the amount owed by Levin to the estate for accumulated interest, the court awarded 8% interest on the full amount of the loan from November 2003 until December 2006, the time period from the inception of the loan until the date of the 2006 agreement. The estate had bargained away the right to collect previously due interest in exchange for Levin's promise to make consecutive, monthly payments on the $150,000 principal. However, as soon as Levin missed a payment, as he did in August 2010, the previously owed interest was again due at 8%. This is because any unpaid monthly payments after the 2006 agreement were a "default," and the parties agreed that a higher 11% rate would be charged for unpaid principal after December 2006. This 11% rate was applied to the balance owed from August 2010 to the time the estate filed its complaint in this case in June 2013.

On review, the court notes that an arithmetic error was made in calculating the amount paid by Levin, which in turn created an error in calculating the dollar amount of interest owed. Levin, as addressed *infra*, made consecutive payments from November 2006 through August 2010, plus one additional payment in February 2011, for a total of 47 payments. Thus, Levin paid $78,333.03 toward the $150,000 principal, not $76,666.36 as stated in the findings of fact and conclusions of law. The calculations are amended as follows: $71,666.98 representing the remaining principal owed to the estate by Levin; $21,679.26 representing the 11% interest on the remaining principal of $71,666.98 for the 33 month period from August 2010 through June 2013, excepting February 2011; and $36,000 representing the sum of money calculated at 8% interest for the 36 month period during which Levin had an outstanding principal of $150,000 with no repayment from December 2003 through November 2006. In total, Levin owes the estate of Sinclair $129,346.23 instead of the $130,003.19 stated originally in the findings of fact and conclusions of law.

In summary, this court understood the 2006 agreement to be a new bargain under the old promissory note. The bargain was as follows: the estate was willing to forgive interest due at 8% from December 2003 through November 2006. This was in exchange for Levin's promise to make timely, monthly payments of $1666.66. If there was a default, meaning a failure to pay in full on a consecutive, monthly basis, the original 8% interest owed was reinstated for the period December 2003 through November 2006, and any unpaid balance after November 2006 was charged at 11%

interest. The text of the documents was not ambiguous.

B. Arithmetic Error

Defendant contends that a mathematical error was made in calculating the amount Levin had already paid on the loan before this lawsuit. However, the Superior Court held that "in order to preserve an issue for appellate review following a civil verdict, the issue must first be raised in a post-trial motion." *Andaloro v. Armstrong World Indus., Inc.*, 2002 Pa. Super. 112, 799 A.2d 71, 84; *see also* Pa. R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Defendant failed to raise the issue in its post-trial motion. Therefore, defendant's claim is waived.

However, on review, this court found an arithmetic error in the amount of $656.96 in Levin's favor, based on counting only 46 of the 47 payments made by Levin. This changed the total amount Levin has paid from $76,666.36 to $78,333.03 and also changed the amount of interest calculated, as discussed *supra*, such that Levin owes estate of Sinclair $129,346.23 instead of the $130,003.19 awarded at judgment.

A remand to amend the judgment order is requested.

## IV. ISSUES RAISED BY THE ESTATE

On appeal, the estate claims that its financial summary should have been admitted despite its failure to comply with Pa.R.E. 1006 and that Levin did not make consecutive payments from November 2006 through August 2010 despite conceding the same in the amended complaint.

A. No Error Or Prejudice Occurred Under Pa. Rule of Evidence 1006 When The Estate's Financial Summary Was Precluded Because The Estate Failed To Comply With The Rule's Requirement That The Underlying Financial Records Be Available To Opposing Counsel Before Or During Trial.

Although awarded a substantial recovery, the estate claims it deserves a new trial because this court enforced a Pennsylvania evidentiary rule that permits the introduction of a financial summary as long as the other party has a chance to check the underlying records before trial or in court.

The estate sought admission of a purported payment summary prepared for this litigation the night before trial by Lou Miller, an employee of Glenmede Trust Co. Plaintiff argued that this summary was admissible under Pa.R.E 1006, which permits a party to summarize the contents of voluminous records. However, Rule 1006 is itself an exception to Rule 1002, or the "best evidence" rule, which requires that a party provide the original document in court to prove its content. To accommodate situations where records are voluminous, Rule 1006 permits a party to provide a summary as long as the original records are made available before or during trial. This should not be a problem in this age of electronic documents, but the estate did not comply.

Moreover, the summary payment history is clearly not a business record. Under Pa.R.E. 803(6), a document is admissible as a business record only if it was made in the ordinary course of business. Both plaintiff and Mr. Miller

stated on the record that the payment history was created in preparation for litigation.

Along with the absence of error, there was no prejudice. Ample evidence offered by the estate proved Levin's liability, including testimony by Edwin Rouh, director of specialized fiduciary services at Glenmede. Rouh said Levin had paid $1666.66 each month from December 2006 until the consecutive string was broken in August 2010. Based on this default, Rauh testified the estate was owed interest all the way back to January 2004. Ultimately, this court agreed.

Having proven its case by other means, the estate was not prejudiced by the preclusion of its summary after failing to comply with Pa.R.E. 1006.

B. Plaintiff Estate Has Acknowledged That Consecutive Payments Were Made.

The estate also proved its case through admission of its own amended complaint, in which the estate acknowledged that Levin indeed made consecutive monthly payments from November 2006 through August 2010. In Paragraph 8, the amended complaint states, "defendant did make monthly payments of $1666.66 from November, 2006 until August, 2010 but has made only one payment of $1666.67 since then, on February 11, 2011."

The Superior Court has held that statements of fact in pleadings, such as an amended complaint, are judicial admissions that are binding on the party. *John B. Conomos, Inc. v. Sun Co., Inc. (R&M)*, 2003 PA Super 310, 831 A.2d 696, 712. However, "An admission is not conclusively binding when the statement is indeterminate, inconsistent,

or ambiguous." *Id.* at 713.

Here, the statement at issue in paragraph 8 is clear. Although the word "consecutive" is not used in paragraph 8, it is reasonable to find that "consecutive" is implied by the language "from November, 2006 *until* August, 2010," meaning payments began in November, 2006 and continued until they stopped in August, 2010.

### V. CONCLUSION

For the foregoing reasons, the estate was granted judgment in the amount of $130,003.19. This judgment should respectfully be affirmed with leave to amend the judgment to add $656.95 in favor of Levin. With approval, a corrected order following remand will enter judgment in favor of the Estate of Sinclair and against Harry Levin in the amount of $129,346.23.