Scott *v.* Troop Water Heater Company, Appellant.

Argued October 5, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*William L. Jacob,* with him *C. W. Sypniewski,* for appellant.

*H. L. Abrams,* for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, November 23, 1942:

The action is assumpsit to recover damages for breach of a contract to deliver 100 water heaters. The contract set up by plaintiff was oral, entered into by telephone. Defendant denies there was any contract, other than for a single water heater, which was delivered and paid for.

Defendant sent out a circular, stating that it had for sale a miscellaneous lot of water heaters at its warehouse in Dallas, Texas, and, owing to the fact that it had discontinued sales offices through the South and West, the warehouse stock of heaters in Dallas would be disposed of "at a tremendous sacrifice." Attention was called to the fact that the heaters were designed for southern territory. They were offered, subject to prior sale, the entire lot of 100 at $10.00 net each f. o. b. Dallas, half lot at $12.50 each, and lots of 12 at $15.00 each. The circular came to the attention of K. L. Williams in Cincinnati. He got in touch with the plaintiff, Scott, and with his approval, and acting for him, called Duerr, manager of defendant, by long-distance telephone on June 16, 1939, and inquired whether the heaters were still available and was told they were. His version of what was said is, that Duerr told him he had 100 instantaneous heaters, No. 55, 2½ gallon, located in Dallas, that the price was $15.00, the purchaser to pay the freight. In answer to the question whether the condition of the heaters was discussed, Williams replied,

"Yes, they were supposed to be new merchandise, brand new heaters." He did not disclose to Duerr that he was acting for Scott. Continuing his narrative, Williams said he told Duerr to ship the 100 heaters, and to send one right away so that it could be tested. This heater was shipped to Williams, billed to him at $15.00, plus freight, and he paid the bill. Scott testified that he was on an extension wire while Williams talked with Duerr, heard their conversation and in part corroborated Williams' statement of it. Duerr denied this version of what took place and said, what he offered was a miscellaneous lot of old heaters which had been in storage for ten years.

It is patent on this record that what was being offered for sale by defendant were not new heaters, but old ones. They are described in the circular as "our warehouse stock of heaters." It is there stated that they formerly sold in large quantities to dealers at $37.50 and $40.00 net. It was this circular that attracted Williams' attention to the heaters and which caused him to mention them to Scott, and, in pursuance of his authorization, to open negotiations for their purchase. It is somewhat remarkable that he would negotiate with Duerr for new heaters, which the latter says he did not have, and have a price of $15.00 fixed for them, when all the testimony indicates that new ones were worth almost three times that price. Indeed, Scott paid $42.50 each for the new ones he purchased to fill a contract which he claims to have entered into with Kohler, after closing with defendant, to sell him (Kohler) the 100 heaters. It is for the recovery of the difference in price between those he claims to have contracted for with defendant, and on the faith of that contract agreed to sell to Kohler, that this action is brought. Moreover, Scott knew the heaters Williams had negotiated for were not new. He so testified. It is obvious, therefore, that when Williams testified, "They were supposed to be new merchandise, brand new heaters," he was to say the least

mistaken. Williams also testified that he was to get 100 heaters of a certain kind, "100 No. 55, 2½ gallon instantaneous." Duerr on the stand said they did not have 100 such heaters, that they had only 15. In answer to the question whether Duerr told him about the other type of heaters he had in stock, Williams replied he could not remember.

On the day following the telephone conversation, Duerr wrote to Williams: "As per your phone communication yesterday, we have instructed our warehouse in Dallas to ship you one of the Bungalow Heaters direct to you at 701 Main Street, Cincinnati, Ohio. This heater will be shipped C. O. D. $15.00, freight collect. We will not accept any other sale for these heaters until you have had an opportunity to receive this sample heater and advise of your acceptance or rejection of our offer. Please do not delay in advising us after you receive the sample as we have several inquiries for these heaters." This letter clearly indicates that a contract for the 100 heaters had not been entered into so far as Duerr was concerned, that the only binding agreement at that time was for the one, and that further negotiations were awaited. Williams testified that in his telephone conversation with Duerr on June 16th, he told him to ship the 100 heaters. Duerr's letter of the next day shows this not to be his understanding. Williams further testified that he again telephoned Duerr on June 27th, after the one which had been shipped and paid for had been tested, to ship the balance of them. He telegraphed him on July 5th, but received no reply. Subsequently, Duerr informed him by letter that, as they had not heard anything definite from him, the heaters had been sold to another party. On July 11th, Williams and Scott called at defendant's office in Pittsburgh and saw Duerr. Williams was unable to remember the conversation that took place.

From the foregoing review of the evidence, it is manifest that the question of whether there was an enforce-

able contract was to be determined by the provisions of the Uniform Sales Act. The trial judge, in his charge, and the court in its opinion on the motion for judgment for defendant and for a new trial, make no mention of the Act. The case was tried by the judge as though the statute was not in existence, although defendant raised it in its affidavit of defense and as an obstacle to recovery in moving for a nonsuit.

The Act (May 19, 1915, P. L. 543, Sec. 4, 69 PS Sec. 42) provides: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

The position of plaintiff is that the statute does not operate, because he accepted and actually received part of the goods, the one heater which was sent for inspection. This view of the situation we cannot accept, because, as defendant's letter of June 17th clearly states, this single heater was not sent as "part of the goods contracted to be sold," but was delivered as separately sold to be separately paid for, as it was. The intent and purpose of the Act was not to make such a circumstance as the delivery of this one article, in the way that it was, the touchstone with which to measure whether an enforceable contract had been entered into. The language of the letter negatives the idea of a sale of the rest of the heaters. The statement in it, that they would not accept any other sale for the heaters until Williams had an opportunity to receive the sample heater, and advise of his acceptance or rejection of the offer, was notice to Williams and Scott, that Duerr did not regard what had been done as completing a contract of sale. Neither Williams nor Scott excepted to the statements in the letter.

All the circumstances in connection with the transaction indicate that a contract, such as plaintiff sets up, was not entered into, that the minds of the parties did not meet on the subject which he avers, a contract for the sale and purchase of No. 55, new heaters; this is shown by the circular and by the letter of June 17th. It clearly evinces that Duerr had not so understood the telephone conversation.

Plaintiff, not having proved a contract enforceable under the Sales Act, he was not entitled to recover.

Judgment reversed and here entered for defendant.