Brister & Koester Lumber Corporation, Appellant, v. American Lumber Corporation.

Argued November 29, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused February 24, 1947.

*David S. Malis,* with him *John Swartz* and *Richard B. Malis,* for appellant.

*Philip Dorfman,* for appellee.

OPINION BY MR. JUSTICE JONES, January 28, 1947:

The basic question in this case is whether the parol contract for a sale of goods in excess of five hundred dollars, which the plaintiff pleads, is legally enforceable against the defendant on the ground (1) that there was a sufficient memorandum of the contract signed by the defendant (the person sought to be charged therewith) or (2) that a partial performance of the contract was accepted and acknowledged by the defendant.

The contract in suit was for the sale by the plaintiff to the defendant of approximately one and a half million board feet of yellow pine lumber of a certain grade at so much per thousand feet. The plaintiff alleged the defendant's failure to comply with the terms of the contract and a resultant loss to the plaintiff for which the suit, here involved, was brought. The learned court below submitted the case to the jury on the issues whether the plaintiff and the defendant had orally agreed in respect of the lumber, as averred by the plaintiff, whether the defendant had failed to live up to the terms of the contract, as likewise averred, and what, if anything, was the extent of the damage which the plaintiff suffered from the defendant's breach if that was found to have occurred. The jury returned a money verdict for the plaintiff, but, upon the defendant's motion, the court below entered judgment for the defendant, n. o. v., from which the plaintiff now appeals.

Accepting, as we necessarily do in the circumstances, only such facts and reasonable inferences therefrom as support the verdict (*Zurcher v. Pittsburgh Railways Company*, 353 Pa. 212, 213-214, 44 A. 2d 581), the salient facts, to which the pertinent rules of law must be applied, are as follows.

At the times herein material, the plaintiff was engaged in the wholesale lumber business, having its general offices in New York City and maintaining, among other local representatives, one in Philadelphia. The defendant (formerly American Supply & Lumber Co.) con-

ducted a retail lumber business in Philadelphia where it had its office and place of business. For further relevant facts, we adopt the following from the succinct summarization made by the learned court below. "One, Waldo, contemplated the construction of 252 houses near Chester, Pennsylvania. He needed lumber, and went to Samuel Cohen, treasurer of defendant corporation, to procure it. Cohen got in touch with Benjamin Choate, Philadelphia sales representative for plaintiff. On July 18, 1941, Cohen, Choate and Waldo went to the offices of plaintiff in New York City, where Waldo's requirements were laid before Miller Brister and Henry J. Koester, president and vice-president, respectively, of plaintiff corporation. Cohen and Koester left the group and went into a private office apart from the others, and after discussing the lumber needed and its cost, finally arrived at prices which would enable Cohen to handle the Waldo business. They rejoined the others and Cohen and Koester announced that the matter was 'all set and that it was a deal'. An order was then made up by Koester on a printed order-book form used by plaintiff's salesmen. This order slip set forth the types, quantities and prices of the lumber ordered. It was not signed by Cohen, but a yellow copy of it was given to him. It was orally agreed that deliveries were to begin about a week after August 1, 1941. Then, with all the parties present, Brister called his firm's buyer, Peterson, in Georgia, and instructed him to get in touch with the mills and place the orders to get the lumber shipped immediately. Cohen, Choate and Waldo then returned to Philadelphia. The same day, two copies of plaintiff's usual confirmation-of-sale forms were mailed to defendant, with instructions to sign and return one. The copy was never returned.

"On August 8, 1941, plaintiff mailed to defendant invoices for six carloads of 3 x 10 No. 2 common. Defendant refused to accept the shipment. During the next two weeks an additional fifteen carloads were consigned to defendant, and after defendant refused to accept

them, the lumber was unloaded and stored at the Ontario Land Company, in Philadelphia, by plaintiff. Ultimately, all the lumber which plaintiff attempted to deliver, 300,000 feet, was resold at a loss which plaintiff fixed at $4 per thousand feet. Plaintiff cancelled orders it had placed with various mills for the remainder of the lumber.

"Plaintiff wrote defendant on August 26, 1941, setting forth that its attempts by phone and letter to get defendant to give instructions as to the disposition of the lumber that was being shipped had been unsuccessful, and that it would look to defendant for all costs of demurrage, reconsignment and diversion. Defendant replied by letter dated August 29, 1941, [Plaintiff's Exhibit No. 1 which appears in full in footnote 1] : [1]

---

[1] "Plaintiff's Exhibit No. 1
"AMERICAN SUPPLY & LUMBER CO.
'Buy American'
1907-09-11 North Sixth Street
Philadelphia, Pa.

August 29, 1941.

"Brister & Koester Lumber Corp.
1776 Broadway,
New York, N. Y.
"Att: Mr. J. L. Sullivan.
"Dear Sir:

"We refer to your letter in regard to shipment of cars of 3 x 10s. You will of course have to check up this letter with Mr. Koester since the conversation preceding this unfortunate situation took place with him.

"When we got back from our visit to New York, Mr. Waldo, for whom the lumber was intended, was told that his F. H. A. committments were coming through. He then asked us to cover him for his lumber requirements.

"We asked you to cover.

"The committments have not come through as yet, and you, without having shipping point, and without notification from us to ship the lumber, began to ship.

"We spoke with Mr. Brister when only two cars had been shipped and he asked us if we couldn't move them to someone else

"On September 6, 1941, plaintiff wrote defendant giving notice· that the order had been formally cancelled, but after the letter was sent, Cohen called, begging plaintiff to keep the order open. The order was kept open. ·However, soon thereafter plaintiff began to re-sell to others the lumber that it had endeavored to deliver to defendant; and on September 25, 1941, defendant itself ordered two truckloads of the stored lumber, amounting to 8,175 feet, for which it paid the [same] price set out in the sales order."

The Statute of Frauds in Pennsylvania, applicable to sales of personalty, is contained in section 4 of our Sales Act of 1915,[2] as amended, and reads as follows: "First. A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in

---

and he would replace them when Mr. Waldo was ready. Before we had an opportunity to work on this plan you began to flood us with invoices testifying to the fact that you were shipping without ever getting a shipping point.

"It is quite obvious that we disclaim any responsibility for these shipments. Mr. Koester knew that after you shipped two cars we spoke with him.

"Your Mr. Choate and I visited Mr. Waldo on Tuesday of this week and Mr. Choate knows just how the situation stands. They are waiting for their final committtments and they are certain that they will come through by the first part of next week.

"We accept none of the charges and we have entered none on our books and we disclaim any responsibility with regard to demurrage or any other charge you may make or the railroad company may make in regard to this matter.

"Very truly yours,
Sam Cohen (s)
SC/EM          AMERICAN SUPPLY & LUMBER CO."

[2] Act of May 19, 1915, P. L. 543, section 4, as amended by Act of April 27, 1925, P. L. 310, section 2, 69 PS 42.

writing of the contract or sale be signed by the party to be charged or his agent in that behalf." Unless the evidence in the case shows fulfillment of the above-quoted statutory provisions, the plaintiff's claim under the parol contract pleaded is legally unenforceable: *Mason-Heflin Coal Co. v. Currie,* 270 Pa. 221, 223, 113 A. 202; *Stein v. Camden Fibre Mills, Inc.,* 148 Pa. Superior Ct. 348, 351, 25 A. 2d 741.

The plaintiff-appellant contends that the defendant's letter of August 29, 1941 (Plaintiff's Exhibit No. 1), signed by Cohen, the defendant's representative, together with related writings (i. e., the printed order and certain items of correspondence), which, by the letter's reference thereto, the defendant accredited and adopted, constitutes a memorandum of the contract sufficient to remove it from the inhibitions of the statute. The required memorandum for such purposes need not be a single writing, entire within itself; it may consist of several writings; and, if they bear connecting reference one to the other or have even an undisclosed but actual relation, which oral evidence may be used to show, they may be sufficient, when taken together, to supply the statute's requirement for a writing: *Manufacturers Light & Heat Co. v. Lamp,* 269 Pa. 517, 520, 112 A. 679. See also *Title Guaranty & Surety Co. v. Lippincott,* 252 Pa. 112, 117, 97 A. 201. But, the interrelation of several documents, necessary to give them the effect of one, must be clearly indicated: *Lippincott v. Stringer,* 80 Pa. Superior Ct. 162, 166. Accordingly, whether the memorandum relied upon is a single document or consists of several related or connected writings, the complete terms of a valid contract must be ascertainable therefrom with certainty and there must also be disclosed therein an intention on the part of the vendee to be bound by the asserted contract. See *Franklin Sugar Refining Co. v. John,* 279 Pa. 104, 109, 123 A. 685. So that, while a letter acknowledging a contractual obligation may be sufficient, a mere indication of the existence

of an incomplete agreement is not sufficient: *Franklin Sugar Refining Co. v. John,* supra, at p. 109. And, for a like reason, a memorandum which fails to specify the obligation and does no more than recognize that there is a contract does not satisfy the statute: *Stein v. Camden Fibre Mills, Inc.,* supra, at p. 351; *Manufacturers Light & Heat Co. v. Lamp,* supra, at pp. 520-521. To satisfy the requirements of the statute, the signed, written memorandum must either contain or, together with other writings adopted by reference, must disclose all of the essential elements of the alleged contract and, if any of such essentials is missing or incompletely stated, the memorandum is insufficient: *Stein v. Camden Fibre Mills, Inc.,* supra, at p. 351; *Franklin Sugar Refining Co. v. Howell,* 274 Pa. 190, 200, 118 A. 109; *Vitro Manufacturing Co. v. Standard Chemical Co.,* 291 Pa. 85, 95, 139 A. 615.

The writings relied upon by the appellant in the instant case fall short of showing either the complete terms essential to a contract, such as the plaintiff pleads, or even that a contract between the parties actually existed. Manifestly, the defendant's letter of August 29, 1941, of itself, does not state any quantity, price, time of shipment, place of delivery or terms of payment. And, while the letter incorporates, by reference, certain other writings, one of which is the unsigned order on a form of the plaintiff company, there is nothing in the additional writings with respect to the time of shipment or the place of delivery. In the indisputable circumstances, here present, both of those matters were of especial significance if the alleged contract was to be consummated. It clearly appears of record and is not controverted by the plaintiff that, at the time of the negotiations between the parties in July 1941 in the plaintiff's New York office, when the parol understanding with respect to the lumber was arrived at, it was known to all present and by all fully recognized that the commencement of work on Waldo's housing project de-

pended upon and necessarily awaited his receiving the requisite permits and priorities from the Federal Housing Administration as well as from other governmental agencies. In fact, the letter upon which the plaintiff so largely relies suggests the crucial interposition of the "F. H. A." between the procurement of the lumber and Waldo's possible need for it in his contemplated construction work. Nowhere, throughout the writings, is there a disclosure of an acknowledgment that the defendant intended to be bound for the purchase of the lumber under consideration. Nor do the words—"We asked you to cover"—in the letter of August 29th import any such intention. But, they do fully and appropriately comport with the situation which the record conclusively discloses as above stated.

The appellant's further contention is that there was part performance which took the parol contract out of the statute. As the statute itself provides, if "the buyer shall accept part of the goods . . . so contracted to be sold . . . and actually receive the same, or give something . . . in part payment", the bar to a parol contract's enforceability may be avoided. See *Franklin Sugar Refining Co. v. Eiseman*, 290 Pa. 486, 491, 139 A. 147. But, delivery to and acceptance by the purchaser must be shown: *Vitro Manufacturing Co. v. Standard Chemical Co.*, supra, at p. 97. And, the goods so accepted must be a part, and *only* a part, of those embraced by the parol contract: Williston, Sales, p. 159. Delivery must be made pursuant to the asserted contract and accepted as being such: *Franklin Sugar Refining Co. v. Eiseman*, supra, at pp. 492-493. A delivery and acceptance of goods under a separate contract, independent of an alleged parol agreement, is not such part performance as will take the latter out of the statute: *Scott v. Troop Water Heater Company*, 345 Pa. 368, 372, 28 A. 2d 922.

In the instant case, the plaintiff formally cancelled its parol contract with the defendant on September 6, 1941, but, upon the request of Cohen acting for the defendant, assented to keeping the matter open for a

while longer. Shortly thereafter, however, the plaintiff began to sell to third parties such of the particular lumber on hand as it could. In the course of those sales, the defendant, through Cohen, purchased 8,175 feet of the lumber. The purchase was made because of the defendant's general requirements and without regard to its undertaking with Waldo to whom none of the lumber was either sold or delivered. It is true that the price paid for the 8,175 feet of lumber, bought by the defendant under the circumstances above-stated, was the same as the price shown on the original unsigned order for the plaintiff's sale to the defendant and that the invoice number was one of those originally included in the unsigned order. Those facts were but coincidental. On the whole, the evidence was legally insufficient to support a jury's finding that the 8,175 feet of lumber, so purchased by the defendant, was accepted as a part of the quantity called for by the original parol contract, and not otherwise. On the contrary, the delivery and acceptance of the 8,175 feet of lumber, as well as the defendant's payment for it, were part of a separate and independent sale and not in pursuance of the original parol agreement. The plaintiff's conduct so confirms. Before the defendant's purchase and acceptance of the 8,175 feet, the plaintiff had already sold to third persons a considerable portion of the lumber which it had formerly allocated to the parol contract. Incidentally, the particular entry made by the plaintiff on its books in connection with the defendant's payment for the relatively small quantity of lumber so purchased and accepted by it and, likewise, the plaintiff's use of one of the original invoice numbers for the purpose of recording the sale were voluntary and self-serving. Such *ex parte* imputations are wholly without evidentiary value to a consideration of the rights and liabilities of the parties in respect of the parol contract averred by the plaintiff.

The assignments of error are overruled and the judgment affirmed.