748 F.2d 827
 William GREEN Jr.; A. Wesley Wyatt and Herbert C. Davis,
individuals t/d/b/a Ice Plant Hill Associates, a
general partnership
v.
INTERSTATE UNITED MANAGEMENT SERVICES CORPORATION, a
Massachusetts corporation.
William GREEN Jr.; A. Wesley Wyatt and Herbert C. Davis,
individuals t/d/b/a Ice Plant Hill Associates, a
general partnership
v.
INTERSTATE UNITED CORPORATION, a Delaware corporation and
Inunco Corp., a Delaware corporation, and Hanson
Industries Inc., a Delaware corporation.
Appeal of William GREEN, Jr.; A. Wesley Wyatt, and Herbert
C. Davis, individuals, trading and doing business
as Ice Plant Hill Associates, a general
partnership, in 84-3124.
Appeal of INTERSTATE UNITED MANAGEMENT SERVICES CORPORATION,
Interstate United Corporation and Hanson
Industries, Inc., in 84-3136.
 Nos. 84-3124, 84-3136.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 1, 1984.
Decided Nov. 23, 1984.
Rehearing and Rehearing In Banc Denied Dec. 21, 1984.
 
 Jeffrey P. Ward (argued), Robert S. Grigsby, Grigsby, Gaca & Davies, P.C., Pittsburgh, Pa., for William Green, Jr., et al.
 Joseph F. McDonough (argued), Mary L. Silverberg, Manion, Alder & Cohen, P.C., Pittsburgh, Pa., for Interstate United Management Services Corp., et al.
 Before ALDISERT, Chief Judge, and HUNTER, and WEIS, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This is an appeal from the judgment of the United States District Court for the Western District of Pennsylvania in consolidated diversity actions brought by William Green, Jr., A. Wesley Wyatt, and Herbert C. Davis, against Interstate United Management Services Corporation ("I.U.M."), Interstate United Corporation ("Interstate"), and Hanson Industries, Inc. ("Hanson"). All parties involved take issue with rulings made at trial by the district court. We will affirm in part and reverse in part.
 
 
 2
 * The events giving rise to this case began in 1977, when representatives of I.U.M.[1] entered into negotiations with Green, the general partner of Wyatt and Davis in a real estate development business, for the construction and lease of an industrial food preparation facility in suburban Pittsburgh. In the spring of 1978, at I.U.M.'s behest, Green presented a proposal for construction and lease of the facility on a site in the Turtle Creek Redevelopment Area. Albert Costley, I.U.M.'s regional vice-president, signed a letter of intent indicating that the proposal would be accepted if a satisfactory lease could be negotiated. However, negotiations fell through after the site proved to be too small to accommodate a facility that would meet I.U.M.'s specifications.
 
 
 3
 In January 1979, Green made a proposal for construction of the facility on an alternative site in North Versailles Township. Allegedly pursuant to authorization by Costley, Green, and his partners purchased on option to buy this site. In a letter dated March 16, 1969, Costley indicated that I.U.M. would accept Green's proposal for construction and lease of the facility on the alternative site, and directed Green to "pursue acquisition" of the site. App at 917. The letter continued:
 
 
 4
 It is our intention to enter into a fifteen year lease at an annual rent of 80,028.00, net, net, net, with two five year options. This agreement contingent on a lease satisfactory to both parties.
 
 
 5
 Please forward lease for approval.
 
 
 6
 Id.
 
 
 7
 On the strength of this letter, Green made arrangements to purchase the site and to finance the project. Green alleges that in August 1979 representatives of I.U.M. orally approved the written lease form he submitted. It is undisputed that at this time I.U.M. sought Interstate's and Hanson's approval of the proposed lease. After an independent appraisal of the proposed project, Interstate and Hanson concluded that the lease was unacceptable and refused to approve it. I.U.M. then declined to sign the lease.
 
 
 8
 Green and his partners then brought suit against I.U.M., Interstate, and Hanson for breach of contract, promissory and equitable estoppel, and misrepresentation. Green and his partners also sued Interstate and Hanson for interference with actual and prospective contractual relations and conspiracy to interfere with contractual relations. The district court limited Green to reliance damages on the breach of contract claim, ruling that there was no writing to satisfy Pennsylvania's Statute of Frauds for leases, Pa.Stat.Ann. tit. 68, 250.202, 250.203 (Purdon 1965). Again relying on the Statute of Frauds, the district court instructed the jury that it could award only reliance damages on Green's claims against Interstate and Hanson for interference with contractual relations. The district court also limited recovery on Green's promissory estoppel claims to reliance damages, and denied Interstate's and Hanson's motion for a directed verdict or judgment notwithstanding the verdict on the tortious interference and conspiracy claims.
 
 
 9
 The jury found I.U.M. liable for breach of an oral lease contract, promissory estoppel, and fraudulent misrepresentation. It found Interstate and Hanson liable for interference with contractual relations and conspiracy to interfere with contractual relations. As the parties had agreed at pretrial conference, the jury was given special interrogatories that required assesment of damages on each claim, standing alone, for which the defendants were found liable. The jury assessed damages as follows:
 
 AGAINST I.U.M.:
 
 10
 Breach of Contract: $55,000.00
Promissory Estoppel: 15,000.00
Misrepresentation: 15,000.00
Punitive Damages: 10,000.00
 
 AGAINST INTERSTATE AND HANSON:
 
 11
 Interference with Contract: $50,000.00
Conspiracy: 50,000.00
 
 
 12
 The district court, again acting pursuant to the parties' pre-trial agreement, molded the assessment of damages, and entered judgment for Green, Wyatt and Henderson for $50,000.00, for which all three defendants were held jointly and severally liable, and for an additional $5,000.00 in compensatory damages and $10,000.00 in punitive damages against I.U.M. alone.
 
 II
 
 13
 In this appeal, Green contends that the district court erred in limiting recovery on the contract claim to reliance damages, arguing that Costley's letter of intent was a writing sufficient to satisfy the Statute of Frauds. We disagree. The letter of intent was clearly insufficient to make out a written lease. Under Pennsylvania law, "writings which show that the parties are still in the process of negotiation, ... which look toward some future contract, ... do not satisfy the writing requirement of the statute of frauds." Conaway v. 20th Century Corp., 491 Pa. 189, 201, 420 A.2d 405, 411 (1980).
 
 
 14
 Moreover, we must also reject Green's contention that the letter of intent itself constituted a fully enforceable agreement to enter into a lease. The letter, if an agreement at all, was by its terms contingent upon negotiation of a satisfactory lease. Green contends that the written lease tendered to I.U.M. satisfied this condition, but concedes that oral testimony would be necessary to tie these documents together. Under Pennsylvania law, if writings must be linked or supplemented by oral testimony in order to make out a contract, the contract is considered an oral one for Statute of Frauds purposes. See, e.g., United States v. 29.16 Acres of Land, 496 F.Supp. 924, 928 (E.D.Pa.1980); Haines v. Minnock Constr. Corp., 289 Pa.Super. 209, 215-16, 433 A.2d 30, 33 (1981). We agree with the district court that to award expected profits on an oral lease, based on an oral agreement to enter into that lease, would contravene the purposes of the Statute of Frauds for leases. For that reason, we will affirm the district court's ruling that recovery on the contract claim here was limited to reliance damages.
 
 III
 
 15
 Green and his associates also contend that the district court erred in limiting their recovery on their promissory estoppel claim to reliance damages. Pennsylvania has adopted the theory of promissory estoppel established by section 90 of the Restatement (Second) of Contracts. See Murphy v. Burke, 454 Pa. 391, 398, 311 A.2d 904, 908 (1973). Under this section, a promise that induces reasonable reliance on the part of the promisee may be binding "if injustice can be avoided only by enforcement of the promise." Restatement (Second) of Contracts, Sec. 90(1) (1981). However, the "remedy granted for breach may be limited as justice requires." Id. "In particular, relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise." Id. comment d.
 
 
 16
 Section 90 is, of course, an extension of the equitable doctrine of estoppel, see id. comment a, "a flexible doctrine, to be applied ... as the equities between the parties preponderate." Straup v. Times Herald, 283 Pa.Super. 58, 71, 423 A.2d 713, 720 (1980) (discussing promissory estoppel). We cannot say that the district court abused its equitable discretion in refusing to allow full-scale enforcement of the promises allegedly relied upon, given their manifestly contingent nature. We will therefore affirm the district court's limitation of recovery on the promissory estoppel claim to reliance damages.
 
 IV
 
 17
 Green and his associates also appeal from the district court's refusal on Statute of Frauds grounds to permit recovery of lost profits on their actions for interference with contractual relations and conspiracy to interfere with contractual relations. We have no occasion to decide this issue, because we hold that Interstate and Hanson are entitled to judgment notwithstanding the verdict on these claims.
 
 
 18
 Interstate and Hanson argue that they were entitled to a directed verdict or to judgment notwithstanding the verdict on the tortious interference and conspiracy claims because they were privileged to intervene in the affairs of I.U.M., their wholly-owned subsidiary. It is true that under the first Restatement of Torts, absence of privilege was an element of a plaintiff's cause of action for tortious interference. See Restatement of Torts, Sec. 766 (1939). However, Pennsylvania now follows the second Restatement, which eschews the concept of privilege to interfere in favor of a case-by-case inquiry as to whether the alleged interference is improper. See Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 482 Pa. 416, 430-31, 433 n. 17, 393 A.2d 1175, 1183, 1184 n. 17 (1978). To decide whether interference in a given case is proper, the court must examine a number of factors and determine "whether, upon consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another." Restatement (Second) of Torts, Sec. 767 comment b (1979).
 
 
 19
 Among the factors that the court must examine in a tortious interference case are "the actor's conduct," "the actor's motive," "the interests sought to be advanced by the actor," and "the relations between the parties." Id. Sec. 767(a), (b), (d), & (g). We think that these factors are paramount in this case. The conduct complained of here is that Interstate and Hanson instructed their wholly-owned subsidiary not to sign a lease tendered by Green and his associates. Interstate and Hanson intervened after an independent appraiser had determined that the contract was a bad bargain; their motive, plainly, was to prevent dissipation of the resources of their wholly-owned subsidiary. In this case, "the social interests in protecting the freedom of the actor" outweigh "the contractual interests of the other." Id. Sec. 767(e). We hold, therefore, that the interference by Interstate and Hanson was proper, and will order entry of judgment notwithstanding the verdict in their favor on the interference and conspiracy claims.[2]
 
 V
 
 20
 Finally, Green and his associates contend that the district court's molding of the jury's assessment of compensatory damages fails to reflect the jury's verdict, arguing that the district court erred in not aggregating the individual assessments made by the jury on the special interrogatories. We find this contention to be wholly devoid of merit. The parties agreed before trial that the district court would mold the damages assessed on the individual claims in order to prevent duplicative recovery. On the special interrogatories the jury determined the out-of-pocket expenses and the value of time spent that would be recoverable by the plaintiffs on each claim standing alone. The judge then molded the assessments and entered judgment for an amount designed to compensate the plaintiffs for their reliance damages once over. We find this to be entirely consistent with the jury's answers on the interrogatories. The compensatory damages award tallies with the amount of reliance damages the jury found that the plaintiffs had incurred, and the jury found the defendants liable only on those claims for which reliance damages alone were recoverable. We therefore affirm the district court's award of compensatory damages.
 
 VI
 
 21
 In sum, the district court's limitation of liability to reliance damages on the breach of contract and promissory estoppel claims is affirmed, as is the award of $55,000 in compensatory damages against I.U.M. The district court's denial of judgment notwithstanding the verdict on the punitive damages claim against I.U.M. is reversed, and entry of judgment in favor of I.U.M. on that issue will be ordered. The district court's denial of Interstate's and Hanson's motion for directed verdict or judgment notwithstanding the verdict is also reversed, and entry of judgment in favor of Interstate and Hanson will be ordered.
 
 
 
 [1]
 I.U.M. is a wholly-owned subsidiary of Interstate, which is a wholly-owned subsidiary of Hanson
 
 
 [2]
 We need not decide, therefore, whether the district court erred in refusing to allow the jury to assess punitive damages against Interstate and Hanson. We reverse, however, the district court's refusal to grant judgment notwithstanding the verdict against Green on the punitive damages claim against I.U.M. In refusing to perform the contract with Green, I.U.M. was merely acting in accordance with the lawful directive of its corporate parent. Thus, while I.U.M. may be liable for contract damages, it can hardly be said to have engaged in the kind of "aggravated conduct involving bad motive or reckless indifference" that is necessary to support a punitive damages award in Pennsylvania. See Franklin Music Company v. American Broadcasting Company, 616 F.2d 528, 542 (3d Cir.1979)