Leonard B. LINSKER

v.

SAVINGS OF AMERICA.

Civ. A. No. 88–2612.

United States District Court, E.D. Pennsylvania.

April 4, 1989.

---

Rochelle B. Fieldcamp, Philadelphia, Pa., for Leonard B. Linsker.

Arthur M. Kaplan, Fine, Kaplan & Black, Philadelphia, Pa., David A. Kahne, for Savings of America.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

Before the court is defendant's motion for partial summary judgment. For the reasons stated below, defendant's motion will be granted.

## I. FACTS

Plaintiff, Leonard B. Linsker, Esquire, is a sophisticated investor who is knowledgeable in the area of real estate and mortgage law. On or about July 8, 1987, he signed an Agreement of Sale to purchase an apartment complex known as Academy Manor ("the property"). Soon thereafter, in an effort to secure financing, plaintiff contacted defendant Savings of America and was referred to Greg Langer, Vice President, Multiple Loan, who was to be the exclusive agent for the processing and disposition of his loan application.

Following an initial inspection of the property, Langer issued a loan application on behalf of defendant. That application specifically stated, inter alia:

> To avoid any misunderstanding concerning this application, you are advised that the policy of Savings of America is not to enter into any oral agreements or make or rely on any oral representations concerning its loans, including statements or representations that may have been expressed in our negotiations. Further, neither borrower nor Lender are relying on any oral agreement, statement, representation or any understanding of fact or law that is not expressed in writing.

\*       \*       \*       \*       \*       \*

> Borrower agrees that neither Association's receipt of this application, nor the processing of said loan by the Association, shall impose any obligations whatever upon Association to make said loan and that no obligation on the part of Association with respect to said loan shall arise until recordation of the Deed of Trust/Mortgage.

\*       \*       \*       \*       \*       \*

> The acceptance of this preliminary application by the Association does not constitute any commitment or representation or other agreement on the part of the Association to make any loan and the applicant further agrees that the loan amount, interest rate, loan term or fees, as requested in this preliminary application for real estate loan, are subject to final loan approval.

[Emphasis added.] Plaintiff subsequently returned the completed loan application and posted a Good Faith Deposit of $4,000. He understood that he would pay all costs associated with the processing his application.

Plaintiff alleges that on September 14, 15 or 16, 1987, defendant orally informed him that his application was approved. Langer acknowledged the settlement date of October 6, 1987 and told plaintiff, "I will send you a checklist." Langer thereafter mailed to plaintiff a letter ("September 16 letter") comprised of a handwritten note and form memorandum. The note read:

Savings of America

To      Len Linsker      Date  9/16/87
From    Greg Langer

I've highlighted those items which pertain to you. These should be ready for the October 6 closing.
Our lawyer is:
  Morris Hershman
Rudolph, Seidner et al
  300 Lewis Tower Bldg.
  225 S 15th St
  215–735–5858
  Call him if you have any questions.

/s/ Greg

The memorandum was unaddressed and unsigned and began as follows:

———————————————
———————————————
———————————————
———————————————
———————————————

RE: ————————————————
Dear ————————————————————

In order to expedite the closing of our loan, the following requirements must be met prior to funding loan proceeds: ...[1]

After making a final visit to the property on September 22, 1987, defendant orally notified plaintiff that the loan would not be approved. A confirmation letter dated October 19, 1987 explained that the loan was disapproved "[d]ue to the market conditions in the immediate surrounding area which may have a negative effect and severe impact on short-range and future market values". Defendant returned $2,044.65 of plaintiffs Good Faith Deposit.

With only a few days remaining before his closing, plaintiff was forced to secure funding from another investor, but in so doing was required to give up one-half interest in the property. Plaintiff subsequently filed this action in which he alleges breach of contract (Count I) and "Fraud, Misrepresentation and Deceit" (Count II). Defendant has moved for summary judgment with respect to Count I.

## II. STATUTE OF FRAUDS

Both parties agree that "an oral agreement to lend money to a borrower in consideration for a mortgage must be in writing pursuant to the statute of frauds." *Bozzi v. Greater Del. Va. Sav. & L. Ass'n*, 255 Pa.Super. 566, 569, 389 A.2d 122, 123 (1978).[2] Both agree that in order to satisfy the Statute of Frauds, "the complete terms of a valid contract must be ascertainable [from the writing] with certainty and there must also be disclosed therein an intention on the part of the [charged party] to be bound by the asserted contract." *Brister & Koester Lumber Corp. v. American Lumber Corp.*, 356 Pa. 33, 39, 50 A.2d 672, 676 (1947). Accord *Sall v. Mueller Brass Co.*, 361 Pa. 449, 65 A.2d 236 (1949). In addition, it is undisputed that the remedy for breach of an alleged contract, where the contract is subject to the Statute of Frauds and not supported by a sufficient writing, is limited to reliance damages. See, e.g., *Green v. Interstate United Management Services Corp.*, 748 F.2d 827,

---

**1.** The highlighted portions of the form letter read as follows:

   1. Copy of Title Commitment.

       *    *    *    *    *    *

   4. ORIGINAL FIRE INSURANCE POLICY ...

   5. Current Survey of the property not more than three months old.

       *    *    *    *    *    *

   8. The ALTA policy of title insurance should include the Negative Amortization and/or Variable RAte [sic] Endorsements.

   9. The ALTA policy requirements are attached hereon.

   10. Insured closings service letters from title company if they act as an agent for another title company.

Upon request in writing from the title company, loan proceeds will be wired a day prior to your closing. The wire transfer of loans funds are to be directed to the Title Company's bank account ONLY....

**2.** The Statute of Frauds, Act of March 21, 1772, Sm.L. 389, [section] 1, 33 P.S. [section] 1, provides in pertinent part:

> [N]o leases, estates or interests, either of freehold or terms of years, or any uncertain interest, of, in, to or out of any messuages, manors, lands, tenements or hereditaments, shall, at any time after the said April 10, 1772, be assigned, granted or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting or surrendering the same, or their agents, thereto lawfully authorized by writing, or by act and operation of law.

The court in *Bozzi*, in a case strikingly similar to the case at bar, concluded:

> Just as an agreement not to foreclose is the basis of a forfeiture of an interest in land, an agreement to lend money in consideration for a mortgage is the basis for the granting of an interest in land. The statute of frauds requires any agreement granting an interest in land to be in writing.

*Bozzi*, supra, 389 A.2d at 124.

830 (3d Cir.1984).[3]  The only issue before the court, therefore, is whether the aforementioned writings satisfy the requirements of the Statute of Frauds.  If they do not, Count I must be dismissed since plaintiff fails to allege any reliance damages.

## III.  DISCUSSION

Plaintiff contends that the loan application together with the four pages sent to him on September 16, 1987 "are multiple writings establishing the essential terms and forming the agreement that required Defendant to fund the loan and take back a mortgage on the subject property."  Plaintiff's Memorandum at 12 n. 2.  The loan application is said to provide the essential terms of the contract[4], and Langer's note of September 16, 1987 and attached checklist is said to be a written loan approval.  Plaintiff's Memorandum at 15.  Plaintiff explains that

> [t]his letter was preceded by an oral discussion in which they Defendant's Vice President, Multiple Loan [sic] stated that the loan was approved.  Consequently, the note did not state the full particulars as it was well established between Langer and the Plaintiff that the terms were set forth in the original application due to their prior negotiations concerning the terms quoted thereon.

Plaintiff's Memorandum at 16.  However, plaintiff maintains that he "does not rely upon oral testimony to show that a contract was reached between the parties. [Rather, he] ... raises the entire context of the loan processing which transpired leading up to the September 16, 1987 letter of approval."  Plaintiff's Memorandum at 16–17.

Plaintiff's arguments are not persuasive, however.  The writings themselves certainly do not evince an intention of the parties to be bound.  Nor do they express the essential terms of the alleged contract.  The loan application explicitly states that the bank can approve or disapprove the loan as well as change any of its terms before closing.  Furthermore, it warns potential borrowers not to rely on any oral promises.  The September 16 letter does nothing more than advise plaintiff of the procedure he should follow and things he should accomplish before the closing.  By itself, or even read together with the loan application, this letter does not suggest the existence of a contract.  These writings speak for themselves and they state loud and clear: "There is no contract here."

Furthermore, the "entire context of the loan processing which transpired leading up to the September 16, 1987 letter" cannot possibly be understood without parol evidence.  One essential element of plaintiff's theory, for example, is the finality of the application's terms: "Langer made clear that the terms were not subject to change when the Plaintiff returned the signed application ..."  Plaintiff's Memorandum at 14.  Plaintiff cannot hope to prove such a fact without relying on parol evidence.  Indeed, most of plaintiff's memorandum of law is dedicated to laying out the facts.  Most of the attached exhibits (more than thirty in number) contain pages and pages of deposition transcripts.

Because plaintiff must introduce parol evidence to prove the existence and terms of the alleged contract, he has not—and cannot—satisfy the requirements of the Statute of Frauds.  "Under Pennsylvania law, if writings must be linked or supplemented by oral testimony in order to make

---

**3.**  Reliance damages include only those amounts actually paid and expenses incurred on the faith of the contract.  *Polka v. May,* 383 Pa. 80, 84, 118 A.2d 154 (1955); *Fannin v. Cratty,* 331 Pa. Super. 326, 480 A.2d 1056, 1060 (1984); *Weir v. Rahon,* 279 Pa.Super. 508, 421 A.2d 315, 317 (1980).

**4.**  See Plaintiff's Memorandum at 13:

> All essential terms of the contract were set forth in the application issued by the Defendant.

| | |
|---|---|
| Loan Amount | $800,000 |
| Initial Interest Rate | 9.00% |
| ARM II Loan Factor | 2.5 above 11th Dist. Cost of Funds |
| Term | 30 Years |
| Monthly Payment Principal & Interest | $6,436.99 |
| Loan Fee | $12,000.00 |
| Processing Fee | $2,500.00 |
| Property | 11901–13 Academy Rd. Philadelphia, PA |
| Hazard Ins. Coverage | $800,000 |

out a contract, the contract is considered an oral one for Statute of Frauds purposes." *Green v. Interstate United Management Services Corp.*, 748 F.2d 827, 830 (3d Cir. 1984).

Additionally, plaintiff's use of multiple documents to prove the intention of the parties and the terms of the alleged agreement is inappropriate. Although

> any number may be taken together to make out the necessary written expression of the terms of the bargain[,] ... there [must be] sufficient connection made out between the papers, without the aid of parol evidence further than to identify papers to which reference is made but not to supply a material term of the contract.... This connection may be established either by the physical attachment of the different papers at the time of signature, or by reference.

4 W. Jaeger, Williston on Contracts [Section] 580 at 128–131 (2d ed.1988), cited approvingly in *Haines v. Minnock Const. Co.*, 289 Pa.Super. 209, 215–216, 433 A.2d 30, 33 (1981). In this case, however, the two writings to which plaintiff refers—the loan application and the September 16 letter—were neither attached nor make reference to each other. Plaintiff, therefore, cannot rely on the loan application to set out the terms of the alleged agreement and the September 16 letter to prove its acceptance by the parties. For this additional reason, plaintiff cannot satisfy the requirements of the Statute of Frauds. Count I will, therefore, be dismissed.

An appropriate order follows.

## ORDER

AND NOW, this 4th day of April, 1989, upon consideration of defendant's motion for partial summary judgment and plaintiff's response thereto, it is hereby

## ORDERED

that defendant's motion is GRANTED and JUDGMENT is hereby entered in favor of the defendant and against the plaintiff on Count I only.